THOMAS C. HORNE
Attorney General
Firm Bar No. 14000

Kevin D. Ray, No. 007485
Lori S. Davis, No. 027875
Aubrey Joy Corcoran, No. 025423
Assistant Attorneys General
1275 West Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-8309
Facsimile:  (602) 542-8308
Email: EducationHealth@azag.gov

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STATE OF ARIZONA; JANICE K. BREWER, Governor of the State of Arizona, in her Official Capacity; WILL HUMBLE, Director of the Arizona Department of Health Services, in his Official Capacity; ROBERT C. HALLIDAY, Director of the Arizona Department of Public Safety, in his Official Capacity; | Case No. |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| vs. | |
| UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF JUSTICE; ERIC H. HOLDER, JR., Attorney General of the United States of America, in his Official Capacity;  DENNIS K. BURKE, United States Attorney for the District of Arizona, in his Official Capacity; ARIZONA ASSOCIATION OF DISPENSARY PROFESSIONALS, INC., an Arizona corporation; JOSHUA LEVINE; PAULA | |

| | |
|---|---|
| 1 | PENNYPACKER; DR. NICHOLAS |
| 2 | FLORES; JANE CHRISTENSEN; PAULA POLLOCK; SERENITY ARIZONA, INC., |
| 3 | an Arizona nonprofit corporation; HOLISTIC HEALTH MANAGEMENT, |
| 4 | INC., an Arizona nonprofit corporation; JEFF SILVA; ARIZONA MEDICAL |
| 5 | MARIJUANA ASSOCIATION; DOES I-X; |
| 6 | DOES XI-XX; |
| 7 | Defendants. |

Plaintiffs, State of Arizona; Janice K. Brewer, Governor of the State of Arizona, in her Official Capacity; Will Humble, Director of Arizona Department of Health Services, in his Official Capacity; and Robert C. Halliday, Director of Arizona Department of Public Safety, in his Official Capacity, through undersigned counsel, bring this civil action for declaratory judgment and allege as follows:

## THE AMMA

1.     On November 2, 2010, Arizona voters were asked to consider whether the State should decriminalize medical marijuana.  Proposition 203, an initiative measure identified as the "Arizona Medical Marijuana Act" ("The Act" or "AMMA"), envisioned decriminalizing medical marijuana for use by people with certain chronic and debilitating medical conditions.  Qualifying patients would be able to receive up to 2 ½ ounces of marijuana every two weeks from medical marijuana dispensaries or to cultivate their own plants under certain conditions.  Proposition 203 provided that its purpose "is to protect patients with debilitating medical conditions, as well as their physicians and providers, from arrest and prosecution, criminal and other penalties and property forfeiture if such patients engage in the medical use of marijuana."

2.     Arizona voters passed Proposition 203 in November 2010; the Governor signed it into law on December 14, 2010.

2

3.      The Act requires the Arizona Department of Health Services ("ADHS") to be responsible for implementing and overseeing the Act.

4.      Specifically, the Act provides for the registration and certification by the ADHS of "nonprofit medical marijuana dispensaries," "nonprofit medical marijuana dispensary agents," "qualifying patients," and "designated caregivers."

5.      Under the Act, the ADHS is mandated to adopt rules governing the registration and certification process within 120 days after the effective date of the AMMA.

6.      Under the Act, the ADHS is required to adopt rules establishing the form and content of applications, the manner in which applications will be considered, the amount of application and renewal fees within certain maximum limits, and rules governing dispensaries.

7.      As required by the Act, the ADHS promulgated final rules that were filed with the Secretary of State on April 13, 2011.

8.      On April 14, 2011, the ADHS began accepting applications from persons who sought to be certified as Qualifying Patients and Designated Caregivers.  As of May 24, 2011, 3,696 Qualifying Patients and 69 Designated Caregivers were certified by the ADHS.

9.      Under the Act, the ADHS is required to register nonprofit medical marijuana dispensaries and to issue a registration certificate within 90 days after receiving an application.

10.      Under the Act, the ADHS is required to register nonprofit medical marijuana dispensary agents and to issue registry identification cards to qualifying patients and designated caregivers within certain time frames after receipt of information and documents as set forth in the AMMA.

11.      The ADHS will begin accepting applications for nonprofit medical marijuana dispensaries and nonprofit medical marijuana dispensary agents on June 1,

2011.  Nonprofit medical marijuana dispensaries and nonprofit medical marijuana dispensary agents must be registered by the ADHS before they can lawfully operate under the Act.

12.     Beginning August 2011, the ADHS will begin issuing registration certificates for nonprofit medical marijuana dispensaries and registry identification cards for nonprofit medical marijuana dispensary agents.

13.     Under the Act, a qualified patient, designated caregiver, or nonprofit medical marijuana dispensary agent with a registry card is allowed to acquire, possess, cultivate, manufacture, use, administer, deliver, transfer, and transport marijuana.

14.     Under the Act, registered nonprofit medical marijuana dispensaries and certain qualified patients and designated caregivers are allowed to cultivate marijuana.

15.     Under the Act, registered nonprofit medical marijuana dispensaries are allowed to dispense marijuana to qualifying patients and designated caregivers.

16.     Under the Act, the ADHS is required to maintain a web-based verification system that can be accessed on a 24-hour basis by law enforcement personnel and nonprofit medical marijuana dispensaries to verify registry identification cards.

17.     Under the Act, the ADHS is required to receive a full set of fingerprints from certain applicants for the purpose of obtaining a state and federal criminal background check.  The ADHS has contracted with the Arizona Department of Public Safety ("DPS") to perform these background checks.

18.     Under the rules for the Act, applicants submitting an application for a registry identification card or to amend, change, or replace a registry identification card for a qualifying patient, designated caregiver, or nonprofit medical marijuana dispensary agent must submit the application electronically through a web-based system created by the ADHS.

19.     Under the Act, the ADHS is allowed to inspect nonprofit medical marijuana dispensaries after reasonable notice.

4

20.     Under the Act, the ADHS is required to generally maintain the confidentiality of all information it receives in the course of its duties.

21.     The Act provides criminal sanctions for the ADHS employees and agents who breach the confidentiality requirement.  Specifically, A.R.S. § 36-2816 provides, "[i]t is a class 1 misdemeanor for any person, including an employee or official of the Department or another state agency or local government, to breach the confidentiality of information obtained pursuant to this chapter."

22.     On or about April 14, 2011, Jenny A. Durkan, United States Attorney for the Western District of Washington and Michael C. Ormsby, United States Attorney for the Eastern District of Washington issued a letter to Christine Gregoire, Washington State Governor regarding medical marijuana legislative proposals ("Durkan/Ormsby Letter"). Attached hereto as Exhibit A.

23.     The Durkan/Ormsby Letter states that "state employees who conducted activities mandated by the Washington legislative proposals would not be immune from liability under the CSA."

24.     On or about April 18, 2011, Plaintiff Will Humble, Director of the ADHS ("Director Humble") spoke by telephone with Assistant United States Attorney Patrick Cunningham inquiring whether the Arizona United States Attorney's Office was considering sending a letter regarding medical marijuana, and if so, if that letter could address whether state employees would be at risk of federal prosecution for implementation of the AMMA.

25.     On May 2, 2011, Dennis Burke, the U.S. Attorney for the District of Arizona, issued a letter ("Burke Letter") addressed to Director Humble, regarding the State's implementation and oversight of the Act. In that letter, the U.S. Attorney advised Director Humble that the growing, distribution, and possession of marijuana "in any capacity, other than as part of a Federally authorized research program, is a violation of Federal law regardless of State laws that purport to legalize such activities."  The letter

further provides that the U.S. Attorney will continue to vigorously prosecute individuals and organizations that participate in unlawful manufacturing, distributing, and marketing activities involving marijuana, even if such activities are permitted under state law. Importantly, the U.S. Attorney wrote that "compliance with Arizona laws and regulations does not provide a safe harbor, nor immunity from Federal prosecution."  A copy of this letter is attached as Exhibit B.

26.    The Burke Letter ultimately ignored Director Humble's request for clarification on the issue of federal liability for state employees implementing the AMMA.

27.    The actions by the Defendant United States Department of Justice ("DOJ") and its United States Attorneys demonstrate a calculated and coordinated effort on the part of the federal government to threaten prosecution of individuals including state employees who conduct lawful activities under a state's medical marijuana law.

28.    Citizens of Arizona and the United States have a right to reasonable certainty with respect to the application of both state and federal law, especially with regard to making medical and business decisions.  Further, employees of the ADHS are at risk of being prosecuted by federal authorities if they comply with and implement the AMMA in accordance with its terms.

29.    On or about October 19, 2009, David W. Ogden ("Deputy AG Ogden"), Deputy Attorney General for the United States Department of Justice, issued to all United States Attorneys a Memorandum for Selected United States Attorneys regarding investigations and prosecutions in states authorizing the medical use of marijuana ("Ogden Memo").  Attached hereto as Exhibit C.

30.    Since that time, citizens, business entities, and state entities have been operating under the guidelines and assumptions of the Ogden Memo in making their business and medical decisions.

31.     Recently, the principles of the Ogden Memo have been systematically modified by a series of letters from U.S. Attorneys, including the letter attached as Exhibit B, which has had a negative effect and created uncertainty as to the application of federal law to state medical marijuana programs, which has harmed the Plaintiffs.  As set forth previously, the positions set forth in Exhibits A and B pose a threat and palpable harm to citizens and employees of the State of Arizona if they participate, implement and carry out the provisions of the AMMA.

32.     Plaintiffs respectfully request that the Court determine whether strict compliance and participation by citizens and state employees in the AMMA provides a safe harbor from federal prosecution, or in the alternative, whether the AMMA is preempted by the Controlled Substances Act ("CSA") and federal law.

<u>**THE PARTIES**</u>

33.     Plaintiff State of Arizona is a sovereign state of the United States.

34.     Plaintiff Janice K. Brewer is the Governor of the State of Arizona ("Governor Brewer").  In that capacity, Governor Brewer is vested with the supreme executive power of Arizona and is responsible for the faithful execution of all laws, including the AMMA, and for the protection of the health and safety of Arizona's citizens and state employees, including those employees responsible for implementing, administering, and overseeing the AMMA.  Governor Brewer sues in her Official Capacity.

35.     Plaintiff Director Humble is the Director of the ADHS.  In that capacity, Director Humble is responsible for the ADHS employees who are implementing and overseeing the AMMA, A.R.S. §§ 36-2801, *et seq*., including but not limited to the issuance of qualified patient, designated caregiver, and nonprofit medical marijuana dispensary agent registration cards and the registration of nonprofit medical marijuana dispensaries.  On June 1, 2011, pursuant to the AMMA, Director Humble and his employees will begin accepting and processing applications for registration of nonprofit

medical marijuana dispensaries and nonprofit medical marijuana dispensary agents. Activity surrounding a state's authorization and/or licensing of medical marijuana dispensaries has garnered the attention of U.S. Attorneys in other states. Director Humble sues in his Official Capacity and on behalf of the ADHS employees who are following state law in implementing the AMMA.

36.     Plaintiff Robert C. Halliday ("Director Halliday") is the Director of the DPS. The DPS employees, under the direction of Director Halliday, perform criminal background checks and use the web-based verification system to verify registry identification cards as contemplated under the AMMA. Director Halliday sues in his Official Capacity and on behalf of the DPS employees who are following state law in implementing the AMMA. Additionally, the DPS, as a state law enforcement entity, faces conflicts, as do other law enforcement entities, between the activity permitted by the AMMA and not permitted by federal law which places those law enforcement employees in an untenable position.

37.     Defendant United States of America ("United States") is a sovereign government of those limited enumerated powers specified in the Constitution of the United States. All references in this Complaint refer to Defendant United States of America in its sovereign capacity.

38.     Defendant DOJ is an executive department of the United States government. The DOJ and its subordinate agencies are responsible for enforcement of the CSA, 21 U.S.C. §§ 801, *et seq.*, under the direction of the United States Attorney General.

39.     Defendant Eric H. Holder, Jr. is the Attorney General of the United States of America ("U.S. Attorney General") and, as head of the DOJ, has responsibilities associated with national drug policy including but not limited to enforcement and prosecution of violations of the CSA. The U.S. Attorney General is sued in his Official Capacity.

40.     Defendant Dennis K. Burke is the United States Attorney for the District of Arizona ("U.S. Attorney Burke"), and as such, is the chief federal law enforcement officer in the District of Arizona.  U.S. Attorney Burke is charged with the responsibility to prosecute violations of federal law, including violations of the CSA.  U.S. Attorney Burke is sued in his Official Capacity.

41.     Defendants United States, DOJ, U.S. Attorney General, and U.S. Attorney Burke are hereinafter referred to as the "Government Defendants."

42.     Defendant Arizona Association of Dispensary Professionals, Inc. ("AZADP") is an Arizona corporation with its principal place of business at 17233 N. Holmes Boulevard, Suite 1615, Phoenix, Arizona 85053.  The AZADP is an organization comprised of approximately 8000 members.  The AZADP membership includes patients, caregivers, dispensary candidates, and other business owners whose operations are directly related to the Arizona medical marijuana industry.

43.     Numerous members of the AZADP, acting in good faith and in full compliance with state laws, and in reliance upon the full faith and credit of the Constitution of Arizona, have made significant personal and financial investments into various medical marijuana business operations throughout Arizona.

44.     Defendant AZADP's standing and legal position in this action may be adverse to that of the government Defendants.

45.     The judgment obtained in this action could have far reaching adverse consequences for the Defendant AZADP's members, causing severe and irreparable personal and financial harm.

46.     Upon information and belief, Defendant Joshua Levine ("Mr. Levine") is and, at all times relevant hereto, has been an Arizona resident and registered Independent voter.  Mr. Levine has declared that he voted in favor of Proposition 203 and believes that his rights, power and influence as a voter will be injured and infringed if Proposition 203 is not fully implemented.

47.     Upon information and belief, Defendant Paula Pennypacker ("Ms. Pennypacker") is and, at all times relevant hereto, has been an Arizona resident and registered Republican voter.  Ms. Pennypacker has declared that she voted in favor of Proposition 203 and believes her rights, power, and influence as a voter will be injured and infringed if Proposition 203 is not fully implemented.

48.     Upon information and belief, at all times relevant hereto, Defendant Dr. Nicholas Flores ("Dr. Flores") was an Arizona licensed physician specializing in oncology and radiology.  Upon information and belief, Dr. Flores has contractually agreed to serve as a medical director for an intended dispensary applicant and believes that his financial interests, contractual and other rights will be compromised and injured if Proposition 203 is not fully implemented.

49.     Upon information and belief, at all times relevant hereto, Defendant Jane Christensen ("Mrs. Christensen") was an Arizona resident.  Upon information and belief, Mrs. Christensen is a prospective dispensary applicant and has spent significant sums in pursuit of a license and believes she stands to suffer injury to her financial and other interests if Proposition 203 is not fully implemented.

50.     Upon information and belief, at all times relevant hereto, Defendant Paula Pollock ("Ms. Pollock") was an Arizona resident.  Upon information and belief, Ms. Pollock was a prospective dispensary applicant and has spent significant sums in pursuit of a license and believes she stands to suffer injury to her financial and other interests if Proposition 203 is not fully implemented.

51.     Upon information and belief, at all times relevant hereto, Defendant Serenity Arizona, Inc. ("Serenity Arizona") was an Arizona nonprofit corporation.  Upon information and belief, Defendant Serenity Arizona is a prospective dispensary applicant and has spent significant sums in pursuit of a license and believes it stands to suffer injury to its financial and other interests if Proposition 203 is not fully implemented.

52.     Upon information and belief, at all times relevant hereto, Defendant Holistic Health Management, Inc. ("Holistic Health") was an Arizona nonprofit corporation.  Upon information and belief, Defendant Holistic Health is a prospective dispensary applicant and has spent significant sums in pursuit of a license and believes it stands to suffer injury to its financial and other interests if Proposition 203 is not fully implemented.

53.     Upon information and believe, at all times relevant hereto, Defendant Jeff Silva ("Mr. Silva") was an Arizona resident suffering from a debilitating condition and has been advised by health care professionals that his condition would benefit from the use of medical marijuana.  Upon information and belief, Mr. Silva believes that he stands to suffer injury if Proposition 203 is not fully implemented.

54.     Defendant Arizona Medical Marijuana Association ("AZMMA") is a real party in interest in regard to the Act's implementation.  The AZMMA was established after the 2010 passage of Proposition 203.  The AZMMA's membership includes the individuals who, as the registered political committee known as the Arizona Medical Marijuana Policy Project, qualified this measure for the ballot and then secured its passage.  The AZMMA and its members are committed to the Act's implementation in a manner that establishes a well-regulated medical marijuana program to serve the needs of patients with debilitating medical conditions and furthers the intent of the Act.

55.     Defendants DOES I-X are sued under fictitious names because their true names and capacities are unknown:  that DOES I-X are persons, partnerships, associations, corporations, limited liability companies, limited partnerships, or some other form of entity that is subject to the jurisdiction of this Court.  DOES I-X assert that the AMMA is a valid and enforceable law that should be fully implemented in accordance with its terms; that the true names and interests of DOES I-X will be determined and this Complaint amended when this information is ascertained.

56.     Defendants DOES XI-XX are sued under fictitious names because their true names and capacities are unknown:  that DOES XI-XX are persons, partnerships, associations, corporations, limited liability companies, limited partnerships, or some other form of entity that is subject to the jurisdiction of this Court.  DOES XI-XX assert that the AMMA is preempted by the CSA and is not a valid and enforceable law and that it should not implemented in accordance with its terms; that the true names and interests of DOES XI-XX will be determined and this Complaint amended when this information is ascertained.

## JURISDICTION AND VENUE

57.     This Court has jurisdiction under Article III of the Constitution of the United States, and pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution of the United States and laws of the United States and present a federal question.

58.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1346 because the United States and its agencies and officers are Defendants.

59.     Plaintiffs are seeking relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

60.     Venue lies in the District of Arizona pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims alleged arose within the jurisdiction of United States District Court for the District of Arizona.

61.     Venue also lies in the District of Arizona pursuant to 28 U.S.C. § 1402 because the United States and its agencies and officers are Defendants and the Plaintiffs reside in and have their principal places of business located in the District of Arizona.

## DECLARATORY JUDGMENT

62.     There is an actual controversy of sufficient immediacy and concreteness relating to the legal rights and duties of the Plaintiffs and their legal relations with the Defendants to warrant relief under 28 U.S.C. § 2201.

63.    The harm to the Plaintiffs and their state employees as a direct result of the actions and threatened actions of the Defendants is sufficiently real and imminent to warrant the issuance of a conclusive declaratory judgment.

64.    It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute that affects the behavior of the defendant toward the plaintiff. Here, a declaration that compliance with the AMMA provides a safe harbor from federal prosecution would settle the current dispute which affects the behavior of the Defendants toward the Plaintiffs.  Conversely, a declaration that the AMMA does not provide a safe harbor from federal prosecution would likewise settle the dispute which affects the behavior of the Defendants toward the Plaintiffs.

## THE CONTROLLED SUBSTANCES ACT
## AND FEDERAL CRIMINAL STATUTES

65.    The Defendant United States categorizes marijuana as a Schedule I controlled substance, pursuant to the CSA, and the United States is authorized to arrest and prosecute individuals and businesses that grow, possess, transport, or distribute marijuana.  21 U.S.C.A. § 812.

66.    The CSA states that under federal law it is unlawful to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.  21 U.S.C.A. § 841.

67.    The CSA states that under federal law it is unlawful to use any communication facility to commit felony violations of the CSA.  21 U.S.C.A. § 843(b).

68.     A "communication facility" is defined as "any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.  21 U.S.C.A. § 843(b).

69.     The CSA states that under federal law it is unlawful to conspire to commit any of the violations set forth in the CSA. 21 U.S.C.A. § 846.

70.     The CSA states that under federal law it is unlawful to knowingly open, lease, rent, use, or maintain property for the manufacturing, storing, or distribution of controlled substances.  21 U.S.C.A. § 856.

71.     Under federal law, it is unlawful to aid and abet the commission of a federal crime.  18 U.S.C.A. § 2.

72.     Under federal law, it is unlawful to conspire to commit an offense against the United States.  18 U.S.C.A. § 371.

73.     Under federal law, it is unlawful to assist an offender thereby becoming an accessory to a crime.  18 U.S.C.A. § 3.

74.     Under federal law, it is unlawful to conceal knowledge of a felony from the United States.  18 U.S.C.A. § 4.

75.     Under federal law, it is unlawful to make certain financial transactions designed to promote illegal activities or to conceal or disguise the source of the proceeds of that illegal activity.  18 U.S.C.A. § 1956.

## STATES ENACTING MEDICAL MARIJUANA LAWS AND WARNINGS / ENFORCEMENT HISTORY OF THE FEDERAL GOVERNMENT DEFENDANTS

76.     Approximately 16 States and the District of Columbia have enacted laws relating to medical marijuana.  Those states include:  Arizona, Washington, Montana, Colorado, California, Rhode Island, Hawaii, Vermont, Nevada, New Mexico, New Jersey, Michigan, Alaska, Delaware, Maine, and Oregon.

77.     At least two States, Rhode Island and Vermont, have suspended their medical marijuana programs following certain acts of enforcement by the Defendants.

78.     Growers and dispensary owners in several states with medical marijuana laws have endured federal raids of their facilities operating under duly enacted state laws.

Such states suffering federal raids include, but are not necessarily limited to, Michigan, Nevada, Montana, and California.

79.    In Arizona, applicants for nonprofit medical marijuana dispensaries have filed for Special Use Permits under the AMMA to operate such facilities.

80.    Based upon the stated course of action that will be taken by the federal government against those lawfully working in furtherance of the states' laws regarding implementation of the AMMA, the property, revenue, and liberty interests of the State of Arizona and its citizens are at risk of seizure, forfeiture, and federal prosecution while acting in compliance with state law.

81.    The employees and officers of the State of Arizona have a mandatory duty to implement and oversee the administration of the AMMA.  Failure to faithfully implement the AMMA exposes Plaintiffs to legal action.  Yet, pursuant to Exhibits A and B, the Plaintiffs and their employees and officers risk prosecution and penalties under federal criminal statutes if they faithfully comply with Arizona law.

82.    The ADHS' employees and agents cannot comply with both the federal requirements of reporting wrongdoing (18 U.S.C.A. §§ 3, 4, and 371) and with the AMMA's confidentiality obligations (A.R.S. §§ 36-2810 and 2816).

83.    In implementing and overseeing the administration of the AMMA, employees and officers of the State of Arizona face a very definite and serious risk that they could be subjected to federal prosecution for aiding and abetting the use, possession, or distribution of marijuana under the CSA.

84.    Not only do the Plaintiffs have a personal stake in the controversy at issue, they also assert the interests of other employees, officers, and citizens of the State of Arizona who are or may be similarly situated.

85.    These employees, officers, and citizens of the State of Arizona would otherwise have standing to sue in their own right.  The interests of these employees, officers, and citizens of the State of Arizona are germane to the purposes of the Plaintiffs

15

in filing this action.  Neither the claims asserted nor the relief requested requires the participation of these individuals in this action.

86.     The Plaintiffs, employees, officers, and citizens of the State of Arizona are presented with the certain and immediate dilemma to choose between complying with Arizona state law and risking serious federal prosecution and other serious penalties.

87.     The Government Defendants have communicated a specific warning or threat of criminal prosecution and other legal proceedings to Director Humble, even if the Plaintiffs and employees, officers, or citizens of the State of Arizona are following Arizona state law.  The federal government has made clear its intent to threaten and eventually eliminate any business or enterprise related to the medical use of marijuana. As such, these actions qualify as pre-enforcement warnings or threats to initiate proceedings against Plaintiffs, and those similarly situated.

88.     The Government Defendants have a history of enforcement against those acting under state law with regard to the medical marijuana laws of other states.

89.     The property of the Plaintiffs and that of citizens are at risk of seizure and forfeiture.  The State of Arizona and its citizens stand to lose revenue.  The employees, officers, and citizens of the State of Arizona are at risk of prosecution and other penalties if they follow the duly enacted AMMA in compliance with the laws of Arizona.

90.     With all due respect to the Government Defendants, the actions of these Government Defendants serve to undermine efforts of the Plaintiffs to implement state law in accordance with the will of the people of the State of Arizona.

91.     In addition, upon information and belief, the remaining Defendants contend that AMMA should be implemented in accordance with its terms and that such implementation will not constitute a violation of the CSA.

THE OGDEN MEMO

92.     On or about October 19, 2009, ("Deputy AG Ogden"), Deputy Attorney General for the United States Department of Justice, issued to all United States Attorneys

16

a Memorandum for Selected United States Attorneys regarding investigations and prosecutions in states authorizing the medical use of marijuana. *See* Exhibit C.

93.    The stated purpose of the Ogden Memo was to provide "clarification and guidance to federal prosecutors in States that have enacted laws authorizing the medical use of marijuana" and to "provide uniform guidance to focus federal investigations and prosecutions in these States on core federal enforcement priorities."

94.    The Ogden Memo states, *inter alia*, that "[t]he Department of Justice is committed to the enforcement of the Controlled Substances Act in all States."

95.    The Ogden Memo states that "Congress has determined that marijuana is a dangerous drug, and the illegal distribution and sale of marijuana is a serious crime. . . ."

96.    The Ogden Memo states that "[i]n general, United States Attorneys are vested with 'plenary authority with regard to federal criminal matters' within their districts.  USAM 9-2.001.  In exercising this authority, United States Attorneys are 'invested by statute and delegation from the Attorney General with the broadest discretion in the exercise of such authority.'  *Id.*  This authority should, of course, be exercised consistent with Department priorities and guidance."

97.    The Ogden Memo states that "[t]he prosecution of significant traffickers of illegal drugs, including marijuana, and the disruption of illegal drug manufacturing and trafficking networks continues to be a core priority in the Department's efforts against narcotics and dangerous drugs, and the Department's investigative and prosecutorial resources should be directed toward these objectives."

98.    The Ogden Memo states that "[a]s a general matter, pursuit of these priorities should not focus federal resources in your States on individuals whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana.  For example, prosecution of individuals with cancer or other serious illnesses who use marijuana as part of a recommended treatment regimen consistent with applicable state law, or those caregivers in clear and unambiguous

1    compliance with existing state law who provide such individuals with marijuana, is

2    unlikely to be an efficient use of limited federal resources."

3        99.    The Ogden Memo states that "prosecution of commercial enterprises that

4    unlawfully market and sell marijuana for profit continues to be an enforcement priority of

5    the Department.  To be sure, claims of compliance with state or local law may mask

6    operations inconsistent with the terms, conditions, or purposes of those laws, and federal

7    law enforcement should not be deterred by such assertions when otherwise pursuing the

8    Department's core enforcement priorities."

9        100.    The Ogden Memo states that "[o]f course, no State can authorize violations

10   of federal law."

11       101.    The Ogden Memo states that "[i]ndeed, this memorandum does not alter in

12   any way the Department's authority to enforce federal law, including laws prohibiting the

13   manufacture, production, distribution, possession, or use of marijuana on federal

14   property."

15       102.    The Ogden Memo states that "[t]his guidance regarding resource allocation

16   does not 'legalize' marijuana or provide a legal defense to a violation of federal law, nor

17   is it intended to create any privileges, benefits, or rights, substantive or procedural,

18   enforceable by any individual, party or witness in any administrative, civil, or criminal

19   matter.  Nor does clear and unambiguous compliance with state law or the absence of one

20   or all of the above factors [unlawful possession or unlawful use of firearms, violence,

21   sales to minors, financial and marketing activities inconsistent with the terms, conditions,

22   or purposes of state law, including evidence of money laundering activity and/or financial

23   gains or excessive amounts of cash inconsistent with purported compliance with state or

24   local law, amounts of marijuana inconsistent with purported compliance with state or

25   local law, illegal possession or sale of other controlled substances, or ties to other

26   criminal enterprises] create a legal defense to a violation of the Controlled Substances

27   Act."

103.   The Ogden Memo states that "nothing herein precludes . . . investigation or prosecution, even when there is clear and unambiguous compliance with existing state law, in particular circumstances where investigation or prosecution otherwise serves important federal interests."

<u>THE STATE OF ARIZONA</u>

104.   On or about May 2, 2011, Defendant U.S. Attorney Burke issued a letter to Plaintiff Director Humble regarding the Arizona Medical Marijuana Program ("Burke Letter").  *See* Exhibit B.

105.   The Burke Letter states, *inter alia*, that "[t]he Department [of Justice] has advised consistently that Congress has determined that marijuana is a controlled substance, placing it in Schedule I of the Controlled Substances Act (CSA).  That means growing, distributing, and possessing marijuana in any capacity, other than as part of a federally authorized research program, is a violation of federal law regardless of state laws that purport to permit such activities.  As has been the case for decades, the prosecution of individuals and organizations involved in the trade of illegal drugs and the disruption of illegal drug manufacturing and trafficking networks, is a core priority of the Department of Justice.  The United States Attorney's Office for the District of Arizona ("the USAO") will continue to vigorously prosecute individuals and organizations that participate in unlawful manufacturing, distribution and marketing activity involving marijuana, even if such activities are permitted under state law."

106.   The Burke Letter states that "[t]he public should understand . . . that even clear and unambiguous compliance with AMMA does not render possession or distribution of marijuana lawful under federal statute."

107.   The Burke Letter states that "the CSA may be vigorously enforced against those individuals and entities who operate large marijuana production facilities. Individuals and organizations -- including property owners, landlords, and financiers -- that knowingly facilitate the actions of traffickers also should know that compliance with

AMMA will not protect them from federal criminal prosecution, asset forfeiture and other civil penalties. This compliance with Arizona laws and regulations does not provide a safe harbor, nor immunity from federal prosecution."

THE STATE OF WASHINGTON

108.    In or about 1998, the State of Washington first enacted a law to decriminalize medical marijuana.

109.    On or about April 14, 2011, Jenny A. Durkan, United States Attorney for the Western District of Washington and Michael C. Ormsby, United States Attorney for the Eastern District of Washington issued a letter to Christine Gregoire, Washington State Governor regarding medical marijuana legislative proposals ("Durkan/Ormsby Letter"). *See* Exhibit A.

110.    The Durkan/Ormsby Letter states, *inter alia*, that "we maintain the authority to enforce the CSA vigorously against individuals and organizations that participate in unlawful manufacturing and distribution activity involving marijuana, even if such activities are permitted under state law."

111.    The Durkan/Ormsby Letter states that "[t]he Washington legislative proposals will create a licensing scheme that permits large-scale marijuana cultivation and distribution.  This would authorize conduct contrary to federal law and thus, would undermine the federal government's efforts to regulate the possession, manufacturing, and trafficking of controlled substances.  Accordingly, the Department [of  Justice] could consider civil and criminal legal remedies regarding those who set up marijuana growing facilities and dispensaries as they will be doing so in violation of federal law."

112.    The Durkan/Ormsby Letter states that "[o]thers who knowingly facilitate the actions of the licensees, including property owners, landlords, and financiers should also know that their conduct violates federal law."

113.    The Durkan/Ormsby Letter states that "state employees who conducted activities mandated by the Washington legislative proposals would not be immune from liability under the CSA."

114.    The Durkan/Ormsby Letter states that "[p]otential actions the Department [of Justice] could consider include injunctive actions to prevent cultivation and distribution of marijuana and other associated violations of the CSA; civil fines; criminal prosecution; and the forfeiture of any property used to facilitate a violation of the CSA."

115.    The Durkan/Ormsby Letter states that "[a]s the Attorney General has repeatedly stated, the Department of Justice remains firmly committed to enforcing the CSA in all states."

<u>THE STATE OF MONTANA</u>

116.    In or about 2004, the State of Montana first enacted a law to decriminalize medical marijuana.

117.    On or about April 20, 2011, Michael W. Cotter, United States Attorney for the District of Montana issued a letter to Senator Jim Peterson, Montana Senate President, and Representative Mike Milburn, Speaker of the House of Representatives for the State of Montana ("Cotter Letter").  Attached hereto as Exhibit D.

118.    The Cotter Letter states, *inter alia*, that "the Department [of Justice] has stated on many occasions that Congress placed marijuana in Schedule I of the Controlled Substances Act (CSA) and, as such, growing, distributing, and possessing marijuana in any capacity, other than as part of a federally authorized research program, is a violation of federal law regardless of state laws that purport to permit such activities."

119.    The Cotter Letter states that "[t]he prosecution of individuals and organizations involved in the trade of any illegal drugs and the disruption of drug trafficking organizations is a core priority of the Department [of Justice].  This core priority includes prosecution of business enterprises that unlawfully market and sell marijuana."

120.   The Cotter Letter states that "we maintain the authority to enforce the CSA against individuals and organizations that participate in unlawful manufacturing and distribution activity involving marijuana, even if such activities are permitted under state law."

## THE STATE OF COLORADO

121.   In or about 2000, the State of Colorado first enacted a law to decriminalize medical marijuana.

122.   On or about April 26, 2011, John F. Walsh, United States Attorney for the District of Colorado issued a letter to John Suthers, Attorney General for the State of Colorado ("Walsh Letter").  Attached hereto as Exhibit E.

123.   The Walsh Letter states, *inter alia*, that "[a]s reiterated in the Ogden memo, the prosecution of individuals and organizations involved in the trade of any illegal drugs and the disruption of drug trafficking organizations is a core priority of the Department. This core priority includes prosecution of business enterprises that unlawfully market and sell marijuana."

124.   The Walsh Letter states that "we maintain the authority to enforce the CSA vigorously against individuals and organizations that participate in unlawful manufacturing and distribution activity involving marijuana, even if such activities are permitted under state law.  The Department's [of Justice] investigative and prosecutorial resources will continue to be directed toward these objectives."

125.   The Walsh Letter states that "[t]he Department [of Justice] would consider civil and criminal legal remedies regarding those who invest in the production of marijuana, which is in violation of federal law, even if the investment is made in a state-licensed fund of the kind proposed."

126.   The Walsh Letter states that "the Department would consider civil actions and criminal prosecution regarding those who set up marijuana growing facilities and

dispensaries, as well as property owners, as they will be acting in violation of federal law."

127.    The Walsh Letter states that "[a]s the Attorney General has repeatedly stated, the Department of Justice remains firmly committed to enforcing the federal law and the Controlled Substances Act in all states."

128.    The Attorney General of Colorado issued a letter dated April 26, 2011, to the Governor of Colorado, John Hickenlooper and Members of the Colorado General Assembly regarding the federal enforcement of marijuana laws ("COAG Letter"). Attached hereto as Exhibit F.

129.    The COAG Letter states "[o]f great concern is the fact that some . . . U.S. Attorneys do not consider state employees who conduct activities under state medical marijuana laws to be immune from liability under federal law."

<u>THE STATE OF CALIFORNIA</u>

130.    In or about 1996, the State of California first enacted a law to decriminalize medical marijuana.

131.    On or about February 1, 2011, Melinda Haag, United States Attorney for the Northern District of California issued a letter to the Oakland City Attorney, John A. Russo ("Haag Letter").  Attached hereto as Exhibit G.

132.    The Haag Letter states, *inter alia*, that "[t]he prosecution of individuals and organizations involved in the trade of any illegal drugs and the disruption of drug trafficking organizations is a core priority of the Department.  This core priority includes prosecution of business enterprises that unlawfully market and sell marijuana."

133.    The Haag Letter states that "we will enforce the CSA vigorously against individuals and organizations that participate in unlawful manufacturing and distribution activity involving marijuana, even if such activities are permitted under state law.  The Department's investigative and prosecutorial resources will continue to be directed toward these objectives."

134.   The Haag Letter states that "[t]he government may also pursue civil injunctions, and the forfeiture of drug proceeds, property traceable to such proceeds, and property used to facilitate drug violations."

135.   The Haag Letter states that "[t]he Department [of Justice] is concerned about the Oakland Ordinance's creation of a licensing scheme that permits large-scale industrial marijuana cultivation and manufacturing as it authorizes conduct contrary to federal law and threatens the federal government's efforts to regulate the possession, manufacturing, and trafficking of controlled substances."

136.   The Haag Letter states that "the Department is carefully considering civil and criminal legal remedies regarding those who seek to set up industrial marijuana growing warehouses in Oakland pursuant to licenses issued by the City of Oakland. Individuals who elect to operate 'industrial cannabis cultivation and manufacturing facilities' will be doing so in violation of federal law.  Others who knowingly facilitate the actions of the licensees, including property owners, landlords, and financiers should also know that their conduct violates federal law."

137.   The Haag Letter states that "[p]otential actions the Department [of Justice] is considering include injunctive actions to prevent cultivation and distribution of marijuana and other associated violations of the CSA; civil fines; criminal prosecution; and the forfeiture of any property used to facilitate a violation of the CSA."

138.   The Haag Letter states that "[a]s the Attorney General has repeatedly stated, the Department of Justice remains firmly committed to enforcing the CSA in all states."

<u>THE STATE OF RHODE ISLAND</u>

139.   In or about 2006, the State of Rhode Island first enacted a law to decriminalize medical marijuana.

24

140.    On or about April 29, 2011, Peter F. Neronha, United States Attorney for the District of Rhode Island, issued a letter to Governor Lincoln D. Chafee regarding medical marijuana ("Neronha Letter").  Attached hereto as Exhibit H.

141.    The Neronha Letter states, *inter alia*, that "[t]he prosecution of individuals and organizations involved in the trade of any illegal drugs and the disruption of drug trafficking organizations is a core priority of the Department of Justice.  This core priority includes prosecution of business enterprises that unlawfully market and sell marijuana."

142.    The Neronha Letter states that "the Department of Justice maintains the authority to enforce the CSA vigorously against individuals and organizations that participate in unlawful manufacturing and distribution activity involving marijuana, even if such activities are permitted under state law.  The Department's investigative and prosecutorial resources will continue to be directed toward these objectives."

143.    The Neronha Letter states that the Rhode Island Medical Marijuana Act and "the registration scheme it purports to authorize, and the anticipated operation of the three centers appear to permit large-scale marijuana cultivation and distribution.  Such conduct is contrary to federal law and thus, undermines the federal government's efforts to regulate the possession, manufacturing, and trafficking of controlled substances."

144.    The Neronha Letter states that "the Department of Justice could consider civil and criminal legal remedies against those individuals and entities who set up marijuana growing facilities and dispensaries as such actions are in violation of federal law.  Others who knowingly facilitate those individuals and entities who set up marijuana growing facilities and dispensaries, including property owners, landlords, and financiers, should also know that their conduct violates federal law."

<u>THE STATE OF HAWAII</u>

145.    In or about 2000, the State of Hawaii first enacted a law to decriminalize medical marijuana.

25

146.    On or about April 12, 2011, Florence T. Nakakuni, United States Attorney for the District of Hawaii, issued a letter to Jodie F. Maesaka-Hirata, Director of the Department of Public Safety for the State of Hawaii regarding a medical marijuana bill pending in the Hawaii Legislature ("Nakakuni Letter").  Attached hereto as Exhibit I.

147.    The pending bill would create a State licensing scheme which permits the marijuana distribution center in each county to support unlimited numbers of resident caregivers and patients and non-resident patients visiting from other states.

148.    The Nakakuni Letter states, *inter alia*, that "[t]he prosecution of individuals and organizations involved in the trade of any illegal drugs and the disruption of drug trafficking organizations is a core priority of the Department [of Justice].  This core priority includes prosecutions of business enterprises that unlawfully market and sell marijuana."

149.    The Nakakuni Letter states that "we maintain the authority to enforce the CSA vigorously against individuals and organizations that participate in unlawful manufacturing and distribution activity of controlled substances, including marijuana, even if such activities are permitted under state law."

150.    The Nakakuni Letter states that "the Department [of Justice] is carefully considering civil and criminal legal remedies if this Bill is enacted and becomes law, with respect to those who seek to create such marijuana distribution centers pursuant thereto."

151.    The Nakakuni Letter states that "[i]ndividuals who elect to operate such marijuana centers will be doing so in violation of Federal law.  Others who knowingly facilitate and assist the actions of the licensees (including property owners, landlords, and financiers) should also know that their conduct violates Federal law."

<u>THE STATE OF VERMONT</u>

152.    In or about 2004, the State of Vermont first enacted a law to decriminalize medical marijuana.

153.    In Vermont, upon information and belief, United States Attorney Tristram Coffin recently warned lawmakers, who are deciding on whether to expand the state's 2004 medical marijuana law to include state-licensed dispensaries, that doing so will place the state in violation of federal law.

<u>THE STATE OF NEW MEXICO</u>

154.    In or about 2007, the State of New Mexico first enacted a law to decriminalize medical marijuana.

155.    On or about August 6, 2007, the Office of the Attorney General for the State of New Mexico issued an opinion letter to Dr. Alfredo Vigil, Cabinet Secretary Designate, regarding the exposure to federal prosecution of state employees acting on behalf of the state with regard to a medical marijuana law ("NMAG Letter").  Attached hereto as Exhibit J.

156.    The NMAG Letter concluded that a Department of Health employee, or representative acting on behalf of the Department of Health, may be subject to federal prosecution under the CSA.

<u>THE STATE OF MAINE</u>

157.    In or about 1999, the State of Maine first enacted a law to decriminalize medical marijuana.

158.    On or about May 16, 2011, Thomas E. Delahanty II, United States Attorney for the District of Maine issued a letter to Senator Earle L. McCormick and Representatives Meredith N. Strang Burgess of the Maine Legislature regarding pending medical marijuana legislation ("Delahanty Letter").  Attached hereto as Exhibit K.

159.    The Delahanty Letter states, *inter alia*, that the U. S. Attorney could not endorse or comment upon the proposed legislation "other than to advise you those activities by users (patients), caregivers and dispensaries remain illegal under the federal Controlled Substances Act (CSA)."

160.   The Delahanty Letter states that "growing, distributing, and possessing marijuana in any capacity, other than as part of a federally authorized research program, is a violation of federal law regardless of state laws permitting such activities."

161.   The Delahanty Letter states that "we will enforce the CSA vigorously against individuals and organizations that participate in unlawful manufacturing and distribution activity involving marijuana, even if such activities are permitted under state law.  The Department's investigative and prosecutorial resources will continue to be directed toward these objectives."

162.   The Delahanty Letter states that "[f]ederal money laundering and related statutes, which prohibit a variety of different types of financial activity involving the movement of drug proceeds, may likewise be utilized.  The government may also pursue civil injunctions, and the forfeiture of drug proceeds, property traceable to such proceeds, and property used to facilitate drug violations."

<u>OTHER STATES</u>

163.   The other states and district that have enacted laws regarding the medical use of marijuana, including Nevada, New Mexico, New Jersey, Michigan, Alaska, Delaware, Oregon, and the District of Columbia, likely have or will receive the same or similar guidance from the Defendants regarding the likelihood of prosecution and enforcement under the CSA.

164.   The Ogden Memo and the aforementioned U.S. Attorneys' Letters state that limited resources should not be used to prosecute seriously ill individuals who use marijuana as part of a medically recommended treatment regimen and are in clear and unambiguous compliance with state laws.  At the present time, the DOJ is using its discretion to not prosecute seriously ill individuals who are in compliance with state medical marijuana laws; other persons or entities who are likewise in clear and unambiguous compliance with the AMMA, however, will be prosecuted.  This absurd

1   result demonstrates the need for judicial intervention and a declaration of rights regarding

2   the AMMA and federal law.

3       165.    Further, the deliberate and ominous shift in tone of the more recent U.S.

4   Attorneys' Letters, including Exhibit B, has had a negative and palpable effect and

5   created  uncertainty as to the application of federal law to state medical marijuana

6   programs, and in particular, the AMMA.  The Court should resolve this uncertainty by

7   declaring whether the AMMA complies with federal law and should be implemented in

8   accordance with its terms, or conversely, whether the AMMA is preempted by the CSA

9   and therefore void.

10                              **CONCLUSION**

11      166.    By virtue of the foregoing, the federal government's position places the

12  AMMA in conflict with the CSA as well as the policies of the DOJ that have been

13  implemented to enforce the CSA.

14      167.    Defendants DOES I-X, contrary to the federal government, contend that the

15  AMMA does not violate federal law and that it should be strictly implemented in

16  accordance with its terms.

17      168.    Defendants DOES XI-XX, in accordance with the federal government,

18  contend that the AMMA does violate federal law and that it should not be implemented.

19      169.    A controversy has arisen and now exists between Plaintiffs and Defendants

20  and, indeed among Defendants, relating to their rights and duties.

21      170.    In light of this controversy and the competing claims of the parties,

22  Plaintiffs desire a declaration of Plaintiffs' rights with respect to whether the AMMA

23  complies with federal law and should be implemented and enforced in accordance with

24  its terms, or whether the AMMA should be declared preempted in whole or in part

25  because of an irreconcilable conflict with federal law.

26      171.    Such a declaration is necessary so that Plaintiffs may ascertain their rights

27  and duties because of the unsettled and competing claims of the parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request a declaratory judgment as follows:

A.     The Court declare the respective rights and duties of the Plaintiffs and the Defendants regarding the validity, enforceability, and implementation of the AMMA.

B.     The Court determine whether strict compliance and participation in the AMMA provides a safe harbor from federal prosecution.

C.     The Court grant such other and further relief as it deems appropriate and proper.

Dated this 27th day of May, 2011.

THOMAS C. HORNE
Attorney General

 s/ Kevin D. Ray
Kevin D. Ray
Lori S. Davis
Aubrey Joy Corcoran
Assistant Attorneys General

Attorneys for Plaintiffs

#1924728