# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Washington*

*Suite 340 Thomas S. Foley U. S. Courthouse   (509) 353-2767*
*P. O. Box 1494                                      Fax (509) 353-2766*
*Spokane, Washington 99210-1494*

Honorable Christine Gregoire                     April 14, 2011
Washington State Governor
P.O. Box 40002
Olympia, Washington 98504-0002

     Re:    Medical Marijuana Legislative Proposals

Dear Honorable Governor Gregoire:

    We write in response to your letter dated April 13, 2011, seeking guidance from the Attorney General and our two offices concerning the practical effect of the legislation currently being considered by the Washington State Legislature concerning medical marijuana. We understand that the proposals being considered by the Legislature would establish a licensing scheme for marijuana growers and dispensaries, and for processors of marijuana-infused foods among other provisions. We have consulted with the Attorney General and the Deputy Attorney General about the proposed legislation. This letter is written to ensure there is no confusion regarding the Department of Justice's view of such a licensing scheme.

    As the Department has stated on many occasions, Congress has determined that marijuana is a controlled substance. Congress placed marijuana in Schedule I of the Controlled Substances Act (CSA) and, as such, growing, distributing, and possessing marijuana in any capacity, other than as part of a federally authorized research program, is a violation of federal law regardless of state laws permitting such activities.

    The prosecution of individuals and organizations involved in the trade of any illegal drugs and the disruption of drug trafficking organizations is a core priority of the Department. This core priority includes prosecution of business enterprises that unlawfully market and sell marijuana. Accordingly, while the Department does not focus its limited resources on seriously ill individuals who use marijuana as part of a medically recommended treatment regimen in compliance with state law as stated in the October 2009 Ogden Memorandum, we maintain the authority to enforce the CSA vigorously against individuals and organizations that participate in unlawful manufacturing and distribution activity involving marijuana, even if such activities are permitted under state law. The Department's investigative and prosecutorial resources will continue to be directed toward these objectives.

Honorable Christine Gregoire
April 14, 2011
Page 2

Consistent with federal law, the Department maintains the authority to pursue criminal or civil actions for any CSA violations whenever the Department determines that such legal action is warranted. This includes, but is not limited to, actions to enforce the criminal provisions of the CSA such as:

> - 21 U.S.C. § 841 (making it illegal to manufacture, distribute, or possess with intent to distribute any controlled substance including marijuana);

> - 21 U.S.C. § 856 (making it unlawful to knowingly open, lease, rent, maintain, or use property for the manufacturing, storing, or distribution of controlled substances);

> - 21 U.S.C. § 860 (making it unlawful to distribute or manufacture controlled substances within 1,000 feet of schools, colleges, playgrounds, and public housing facilities, and within 100 feet of any youth centers, public swimming pools, and video arcade facilities);

> - 21 U.S.C. § 843 (making it unlawful to use any communication facility to commit felony violations of the CSA); and

> - 21 U.S.C. § 846 (making it illegal to conspire to commit any of the crimes set forth in the CSA).

In addition, Federal money laundering and related statutes which prohibit a variety of different types of financial activity involving the movement of drug proceeds may likewise be utilized. The Government may also pursue civil injunctions, and the forfeiture of drug proceeds, property traceable to such proceeds, and property used to facilitate drug violations.

The Washington legislative proposals will create a licensing scheme that permits large-scale marijuana cultivation and distribution. This would authorize conduct contrary to federal law and thus, would undermine the federal government's efforts to regulate the possession, manufacturing, and trafficking of controlled substances. Accordingly, the Department could consider civil and criminal legal remedies regarding those who set up marijuana growing facilities and dispensaries as they will be doing so in violation of federal law. Others who knowingly facilitate the actions of the licensees, including property owners, landlords, and financiers should also know that their conduct violates federal law. In addition, state employees who conducted activities mandated by the Washington legislative proposals would not be immune from liability under the CSA. Potential actions the Department could consider include injunctive actions to prevent cultivation and distribution of marijuana and other associated violations of the CSA; civil fines; criminal prosecution; and the forfeiture of any

Honorable Christine Gregoire
April 14, 2011
Page 3

property used to facilitate a violation of the CSA.  As the Attorney General has repeatedly stated, the Department of Justice remains firmly committed to enforcing the CSA in all states.

We hope this letter assists the State of Washington and potential licensees in making informed decisions regarding the cultivation, manufacture, and distribution of marijuana.

Very truly yours,


Jenny A. Durkan
United States Attorney
Western District of Washington

Michael C. Ormsby
United States Attorney
Eastern District of Washington

# EXHIBIT B



**U.S. Department of Justice**

*United States Attorney*
*District of Arizona*

_____

*Two Renaissance Square*          *Main:  (602) 514-7500*
*40 North Central Avenue, Suite 1200*   *Main FAX:  (602) 514-7693*
*Phoenix, Arizona  85004-4408*

May 2, 2011

Will Humble
Director
Arizona Department of Health Services
150 N. 18th Avenue
Phoenix, Arizona 85007

  *Re: Arizona Medical Marijuana Program*

Dear Mr. Humble:

   I understand that on April 13, 2011, the Arizona Department of Health Services filed rules implementing the Arizona Medical Marijuana Act (AMMA), passed by Arizona voters on November 2, 2010. The Department of Health Services rules create a regulatory scheme for the distribution of marijuana for medical use, including a system for approving, renewing, and revoking registration for qualifying patients, care givers, nonprofit dispensaries, and dispensary agents. I am writing this letter in response to numerous inquiries and to ensure there is no confusion regarding the Department of Justice's view of such a regulatory scheme.

   The Department has advised consistently that Congress has determined that marijuana is a controlled substance, placing it in Schedule I of the Controlled Substances Act (CSA).  That means growing, distributing, and possessing marijuana in any capacity, other than as part of a federally authorized research program, is a violation of federal law regardless of state laws that purport to permit such activities. As has been the case for decades, the prosecution of individuals and organizations involved in the trade of illegal drugs and the disruption of illegal drug manufacturing and trafficking networks, is a core priority of the Department of Justice. The United States Attorney's Office for the District of Arizona ("the USAO") will continue to vigorously prosecute individuals and organizations that participate in unlawful manufacturing, distribution and marketing activity involving marijuana, even if such activities are permitted under state law.

   An October, 2009, memorandum from then-Deputy Attorney General Ogden provided guidance that, in districts where a state had enacted medical marijuana programs, USAOs ought not focus their limited resources on those seriously ill individuals who use marijuana as part of a medically recommended treatment regimen  and  are in clear and unambiguous compliance with such state laws. And, as has been our policy, this USAO will continue to follow that guidance. The public should understand, however, that even clear and unambiguous compliance with AMMA does not render possession or distribution of marijuana lawful under federal statute.

   Moreover, the CSA may be vigorously enforced against those individuals and entities who operate large marijuana production facilities. Individuals and organizations – including property owners, landlords,

Letter to Director Will Humble
May 2, 2011
Page 2

and financiers – that knowingly facilitate the actions of traffickers also should know that compliance with AMMA will not protect them from federal criminal prosecution, asset forfeiture and other civil penalties. This compliance with Arizona laws and regulations does not provide a safe harbor, nor immunity from federal prosecution.

The USAO also has received inquiries about our approach to AMMA in Indian Country, which comprises nearly one third of the land and five percent of the population of Arizona, and in which state law – including AMMA – is largely inapplicable.  The USAO currently has exclusive felony jurisdiction over drug trafficking offenses in Indian Country.  Individuals or organizations that grow, distribute or possess marijuana on federal or tribal lands will do so in violation of federal law, and may be subject to federal prosecution, no matter what the quantity of marijuana.  The USAO will continue to evaluate marijuana prosecutions in Indian Country and on federal lands on a case-by-case basis.  Individuals possessing or trafficking marijuana in Indian Country also may be subject to tribal penalties.

I hope that this letter assists the Department of Health Services and potential registrants in making informed choices regarding the possession, cultivation, manufacturing, and distribution of medical marijuana.

Sincerely yours,

DENNIS K. BURKE
United States Attorney
District of Arizona

# EXHIBIT C



**U.S. Department of Justice**

Office of the Deputy Attorney General

---

The Deputy Attorney General                                    *Washington, D.C. 20530*

October 19, 2009

MEMORANDUM FOR SELECTED UNITED STATES ATTORNEYS

FROM:        David W. Ogden
             Deputy Attorney General

SUBJECT:     Investigations and Prosecutions in States
             <u>Authorizing the Medical Use of Marijuana</u>

      This memorandum provides clarification and guidance to federal prosecutors in States that have enacted laws authorizing the medical use of marijuana. These laws vary in their substantive provisions and in the extent of state regulatory oversight, both among the enacting States and among local jurisdictions within those States. Rather than developing different guidelines for every possible variant of state and local law, this memorandum provides uniform guidance to focus federal investigations and prosecutions in these States on core federal enforcement priorities.

      The Department of Justice is committed to the enforcement of the Controlled Substances Act in all States. Congress has determined that marijuana is a dangerous drug, and the illegal distribution and sale of marijuana is a serious crime and provides a significant source of revenue to large-scale criminal enterprises, gangs, and cartels. One timely example underscores the importance of our efforts to prosecute significant marijuana traffickers: marijuana distribution in the United States remains the single largest source of revenue for the Mexican cartels.

      The Department is also committed to making efficient and rational use of its limited investigative and prosecutorial resources. In general, United States Attorneys are vested with "plenary authority with regard to federal criminal matters" within their districts. USAM 9-2.001. In exercising this authority, United States Attorneys are "invested by statute and delegation from the Attorney General with the broadest discretion in the exercise of such authority." *Id.* This authority should, of course, be exercised consistent with Department priorities and guidance.

      The prosecution of significant traffickers of illegal drugs, including marijuana, and the disruption of illegal drug manufacturing and trafficking networks continues to be a core priority in the Department's efforts against narcotics and dangerous drugs, and the Department's investigative and prosecutorial resources should be directed towards these objectives. As a general matter, pursuit of these priorities should not focus federal resources in your States on

Memorandum for Selected United States Attorneys                                    Page 2
Subject: Investigations and Prosecutions in States Authorizing the Medical Use of Marijuana

individuals whose actions are in clear and unambiguous compliance with existing state laws
providing for the medical use of marijuana. For example, prosecution of individuals with cancer
or other serious illnesses who use marijuana as part of a recommended treatment regimen
consistent with applicable state law, or those caregivers in clear and unambiguous compliance
with existing state law who provide such individuals with marijuana, is unlikely to be an efficient
use of limited federal resources. On the other hand, prosecution of commercial enterprises that
unlawfully market and sell marijuana for profit continues to be an enforcement priority of the
Department. To be sure, claims of compliance with state or local law may mask operations
inconsistent with the terms, conditions, or purposes of those laws, and federal law enforcement
should not be deterred by such assertions when otherwise pursuing the Department's core
enforcement priorities.

Typically, when any of the following characteristics is present, the conduct will not be in
clear and unambiguous compliance with applicable state law and may indicate illegal drug
trafficking activity of potential federal interest:

- unlawful possession or unlawful use of firearms;
- violence;
- sales to minors;
- financial and marketing activities inconsistent with the terms, conditions, or purposes of
  state law, including evidence of money laundering activity and/or financial gains or
  excessive amounts of cash inconsistent with purported compliance with state or local law;
- amounts of marijuana inconsistent with purported compliance with state or local law;
- illegal possession or sale of other controlled substances; or
- ties to other criminal enterprises.

Of course, no State can authorize violations of federal law, and the list of factors above is
not intended to describe exhaustively when a federal prosecution may be warranted.
Accordingly, in prosecutions under the Controlled Substances Act, federal prosecutors are not
expected to charge, prove, or otherwise establish any state law violations. Indeed, this
memorandum does not alter in any way the Department's authority to enforce federal law,
including laws prohibiting the manufacture, production, distribution, possession, or use of
marijuana on federal property. This guidance regarding resource allocation does not "legalize"
marijuana or provide a legal defense to a violation of federal law, nor is it intended to create any
privileges, benefits, or rights, substantive or procedural, enforceable by any individual, party or
witness in any administrative, civil, or criminal matter. Nor does clear and unambiguous
compliance with state law or the absence of one or all of the above factors create a legal defense
to a violation of the Controlled Substances Act. Rather, this memorandum is intended solely as a
guide to the exercise of investigative and prosecutorial discretion.

Memorandum for Selected United States Attorneys                                    Page 3
Subject: Investigations and Prosecutions in States Authorizing the Medical Use of Marijuana

Finally, nothing herein precludes investigation or prosecution where there is a reasonable basis to believe that compliance with state law is being invoked as a pretext for the production or distribution of marijuana for purposes not authorized by state law.  Nor does this guidance preclude investigation or prosecution, even when there is clear and unambiguous compliance with existing state law, in particular circumstances where investigation or prosecution otherwise serves important federal interests.

Your offices should continue to review marijuana cases for prosecution on a case-by-case basis, consistent with the guidance on resource allocation and federal priorities set forth herein, the consideration of requests for federal assistance from state and local law enforcement authorities, and the Principles of Federal Prosecution.

cc:  All United States Attorneys

Lanny A. Breuer
Assistant Attorney General
Criminal Division

B. Todd Jones
United States Attorney
District of Minnesota
Chair, Attorney General's Advisory Committee

Michele M. Leonhart
Acting Administrator
Drug Enforcement Administration

H. Marshall Jarrett
Director
Executive Office for United States Attorneys

Kevin L. Perkins
Assistant Director
Criminal Investigative Division
Federal Bureau of Investigation

# EXHIBIT D



**U.S. Department of Justice**

*United States Attorney*
*District of Montana*

| | | |
|---|---|---|
| MICHAEL W. COTTER | 901 Front Street, Suite 1100 | 406-457-5120 |
| United States Attorney | Helena, Montana 50626 | |

April 20, 2011

Senator Jim Peterson, Senate President
Representative Mike Milburn,
    Speaker of the House of Representatives
PO Box 200500
Helena, Montana 59620-0500

Gentlemen:

This acknowledges receipt of your letter dated April 18, 2011, requesting Department of Justice guidance concerning a proposed regulatory scheme by the Montana Legislature for the use of marijuana and marijuana infused products for therapeutic purposes. While the Department of Justice has not reviewed the specific legislative proposal for licensing and regulating medical marijuana that you indicate is being finalized, the Department has stated on many occasions that Congress placed marijuana in Schedule I of the Controlled Substances Act (CSA) and, as such, growing, distributing, and possessing marijuana in any capacity, other than as part of a federally authorized research program, is a violation of federal law regardless of state laws that purport to permit such activities.

The prosecution of individuals and organizations involved in the trade of any illegal drugs and the disruption of drug trafficking organizations is a core priority of the Department. This core priority includes prosecution of business enterprises that unlawfully market and sell marijuana. While the Department generally does not focus its limited resources on seriously ill individuals who use marijuana as part of a medically recommended treatment regimen consistent with applicable state law, as stated in the October 2009 Ogden Memorandum, we maintain the authority to enforce the CSA against individuals and organizations that participate in unlawful manufacturing and distribution activity involving marijuana, even if such activities are permitted under state law. The Department's investigative and prosecutorial resources will continue to be directed toward these objectives.

April 20, 2011
Page 2

Hopefully this letter assists the Montana Legislature in making its decisions regarding the cultivation, manufacture and distribution of marijuana.

Sincerely,

Michael W. Cotter
United States Attorney

# EXHIBIT E



**U.S. DEPARTMENT OF JUSTICE**

**John F. Walsh**

*United States Attorney*
*District of Colorado*

---

*1225 Seventeenth Street, Suite 700*          303-454-0100
*Seventeenth Street Plaza     (FAX)*          303-454-0400
*Denver, Colorado 80202*

April 26, 2011

John Suthers
Attorney General
State of Colorado
1525 Sherman St., 7th Floor
Denver, CO 80203

Dear Attorney General Suthers:

I am writing in response to your request for clarification of the position of the U.S. Department of Justice (the "Department") with respect to activities that would be licensed or otherwise permitted under the terms of pending House Bill 1043 in the Colorado General Assembly.   I have consulted with the Attorney General of the United States and the Deputy Attorney General of the United States about this bill, and write to ensure that there is no confusion as to the Department's views on such activities.

As the Department has noted on many prior occasions, the Congress of the United States has determined that marijuana is a controlled substance, and has placed marijuana on Schedule I of the Controlled Substances Act (CSA).  Federal law under Title 21 of the United States Code, Section 841, prohibits the manufacture, distribution or possession with intent to distribute any controlled substance, including marijuana, except as provided under the strict control provisions of the CSA.  Title 21, Section 856 makes it a federal crime to lease, rent or maintain a place for the purpose of manufacturing, distributing or using a controlled substance.  Title 21, Section 846 makes it a federal crime to conspire to commit that crime, or any other crime under the CSA. Title 18, Section 2 makes it a federal crime to aid and abet the commission of a federal crime. Moreover, federal anti-money laundering statutes, including Title 18, Section 1956, make illegal certain financial transactions designed to promote illegal activities, including drug trafficking, or to conceal or disguise the source of the proceeds of that illegal activity.  Title 18, Section 1957, makes it illegal to engage in a financial transaction involving more than $10,000 in criminal proceeds.

In October 2009, the Department issued guidance (the "Ogden Memo") to U.S. Attorneys around the country in states with laws authorizing the use of marijuana for medical purposes

John Suthers
April 26, 2011
Page 2

under state law.  At the time the Ogden Memo issued, Colorado law, and specifically, Amendment 20 to the Colorado Constitution, authorized the possession of only very limited amounts of marijuana for medical purposes by individuals with serious illnesses and those who care for them.[1]  As reiterated in the Ogden memo, the prosecution of individuals and organizations involved in the trade of any illegal drugs and the disruption of drug trafficking organizations is a core priority of the Department.  This core priority includes prosecution of business enterprises that unlawfully market and sell marijuana.  Accordingly, while the Department does not focus its limited resources on seriously ill individuals who use marijuana as part of a medically recommended treatment regimen in compliance with state law as stated in the Ogden Memo, we maintain the authority to enforce the CSA vigorously against individuals and organizations that participate in unlawful manufacturing and distribution activity involving marijuana, even if such activities are permitted under state law.  The Department's investigative and prosecutorial resources will continue to be directed toward these objectives.

It is well settled that a State cannot authorize violations of federal law.  The United States District Court for the District of Colorado recently reaffirmed this fundamental principle of our federal constitutional system in *United States v. Bartkowicz*, No. 10-cr-00118-PAB (D. Colo. 2010), when it held that Colorado state law on medical marijuana does not and cannot alter federal law's prohibition on the manufacture, distribution or possession of marijuana, or provide a defense to prosecution under federal law for such activities.

The provisions of Colorado House Bill 1043, if enacted, would permit under state law conduct that is contrary to federal law, and would threaten the ability of the United States government to regulate possession, manufacturing and trafficking in controlled substances, including marijuana.  First, provisions of a proposed medical marijuana investment fund amendment to H.B. 1043, which ultimately did not pass in the Colorado House but which apparently may be reintroduced as an amendment in the Colorado Senate, appear to contemplate that the State of Colorado would license a marijuana investment fund or funds under which both Colorado and out-of-state investors would invest in commercial marijuana operations.   The Department would consider civil and criminal legal remedies regarding those who invest in the production of marijuana, which is in violation of federal law, even if the investment is made in a state-licensed fund of the kind proposed.

Second, the terms of H.B. 1043 would authorize Colorado state licensing of "medical marijuana infused product" facilities with up to 500 marijuana plants, with the possibility of licensing even larger facilities, with no stated number limit, with a state-granted waiver based upon consideration of broad factors such as "business need."  Similarly, the Department would consider civil actions and criminal prosecution regarding those who set up marijuana growing facilities and dispensaries, as well as property owners, as they will be acting in violation of federal law.

---

[1]  As passed by Colorado voters in 2000, Amendment 20 made lawful under Colorado law the possession by a patient or caregiver of patient of  "[n]o more than two ounces of a useable form of marijuana or no more than six marijuana plants with three or fewer being mature, flowering plants producing a usable form of marijuana." Colo. Const. art. XVIII, § 14(4)(a).  Within these limits, the Amendment authorized a medical marijuana "affirmative defense" to state criminal prosecution for possession of marijuana.  Colo. Const. art. XVIII, § 14(2)(a), (b).

John Suthers
April 26, 2011
Page 3

As the Attorney General has repeatedly stated, the Department of Justice remains firmly committed to enforcing the federal law and the Controlled Substances Act in all states.  Thus, if the provisions of H.B. 1043 are enacted and become law, the Department will continue to carefully consider all appropriate civil and criminal legal remedies to prevent manufacture and distribution of marijuana and other associated violations of federal law, including injunctive actions; civil penalties; criminal prosecution; and the forfeiture of any property used to facilitate a violation of federal law, including the Controlled Substances Act.

I hope this letter provides the clarification you have requested, and assists the State of Colorado and its potential licensees in making informed decisions regarding the cultivation, manufacture, and distribution of marijuana, as well as related financial transactions.

Very truly yours,

JOHN F. WALSH
United States Attorney
District of Colorado


cc:     Eric Holder, Attorney General of the United States
        James Cole, Deputy Attorney General of the United States

# EXHIBIT F



# ATTORNEY GENERAL OF COLORADO
## John W. Suthers

April 26, 2011

Governor John Hickenlooper
Colorado State Capitol

Members of the Colorado General Assembly
Colorado State Capitol

Re:  Federal Enforcement of Marijuana Laws

Dear Governor Hickenlooper and Members of the Colorado General Assembly:

I feel compelled to advise you of recent developments in regard to the federal law enforcement position regarding medical marijuana.

As you are aware, in October of 2009 the U.S. Department of Justice issued a memo to federal law enforcement (the "Ogden memo") indicating that, while manufacturing, possession and distribution of marijuana was a violation of federal law, the department would not employ its resources to pursue individuals acting in strict compliance with state medical marijuana laws.

Since the Ogden memo was issued several states, including Colorado, have enacted medical marijuana regulatory schemes that have resulted in explosive growth in the number of persons claiming to be using marijuana for medical purposes. In Colorado for example, there are now approximately 123,000 registered medical marijuana patients. As a result, the DOJ, through various United States Attorneys, has responded to inquiries in order to clarify the scope of the Ogden memo. I am enclosing copies of several such letters, including a letter to me from John Walsh, the United States Attorney for the District of Colorado. These letters indicate that while the Department of Justice will not focus its limited resources on seriously ill individuals who use marijuana as part of a medically recommended treatment regimen in compliance with state law, it does maintain its full authority to vigorously enforce federal law against individuals and organizations that participate in unlawful manufacturing and distribution activity involving marijuana, *even if such activities are permitted under state law.* Of great concern is the fact that some of the letters make clear the U.S. Attorneys do not consider state employees who conduct activities under state medical marijuana laws to be immune from liability under federal law.

Governor Hickenlooper, General Assembly
April 26, 2011
Page 2

    The letter from U.S. Attorney Walsh, in addition to sharing the viewpoint of the
other U.S. Attorneys about the legality of grow operations and dispensaries, elaborates
on his specific concerns regarding Colorado House Bill 1043, currently pending in the
General Assembly.

    Because this clarification of the Ogden memo raises significant issues regarding
the medical marijuana regulatory scheme enacted by the Colorado General Assembly
in 2010 (which has resulted in widespread manufacture and distribution of medical
marijuana in Colorado) and issues regarding currently pending legislation, I wanted to
ensure that you were made aware of these developments as soon as possible.

                        Sincerely,

                        JOHN W. SUTHERS
                        Colorado Attorney General


Enclosures

c:  Roxy Huber, Executive Director, Department of Revenue
    Dr. Christopher E. Urbina, Executive Director, CDPHE

# EXHIBIT G



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

*Melinda Haag*
*United States Attorney*

*11th Floor, Federal Building*
*450 Golden Gate Avenue, Box 36055*
*San Francisco, California  94102-3495*

*(415) 436-7200*

*FAX:(415) 436-7234*

February 1, 2011

John A. Russo, Esq.
Oakland City Attorney
1 Frank Ogawa Plaza, 6th Floor
Oakland, California  94612

Dear Mr. Russo:

I write in response to your letter dated January 14, 2011 seeking guidance from the Attorney General regarding the City of Oakland Medical Cannabis Cultivation Ordinance. The U.S. Department of Justice is familiar with the City's solicitation of applications for permits to operate "industrial cannabis cultivation and manufacturing facilities" pursuant to Oakland Ordinance No. 13033 (Oakland Ordinance). I have consulted with the Attorney General and the Deputy Attorney General about the Oakland Ordinance. This letter is written to ensure there is no confusion regarding the Department of Justice's view of such facilities.

As the Department has stated on many occasions, Congress has determined that marijuana is a controlled substance. Congress placed marijuana in Schedule I of the Controlled Substances Act (CSA) and, as such, growing, distributing, and possessing marijuana in any capacity, other than as part of a federally authorized research program, is a violation of federal law regardless of state laws permitting such activities.

The prosecution of individuals and organizations involved in the trade of any illegal drugs and the disruption of drug trafficking organizations is a core priority of the Department. This core priority includes prosecution of business enterprises that unlawfully market and sell marijuana. Accordingly, while the Department does not focus its limited resources on seriously ill individuals who use marijuana as part of a medically recommended treatment regimen in compliance with state law as stated in the October 2009 Ogden Memorandum, we will enforce the CSA vigorously against individuals and organizations that participate in unlawful manufacturing and distribution activity involving marijuana, even if such activities are permitted under state law. The Department's investigative and prosecutorial resources will continue to be directed toward these objectives.

Consistent with federal law, the Department maintains the authority to pursue criminal or civil actions for any CSA violations whenever the Department determines that such legal action is warranted. This includes, but is not limited to, actions to enforce the criminal provisions of the CSA such as Title 21 Section 841 making it illegal to manufacture, distribute, or possess with intent to distribute any controlled substance including marijuana; Title 21 Section 856 making it

John A. Russo
February 1, 2011
Page 2

unlawful to knowingly open, lease, rent, maintain, or use property for the manufacturing, storing, or distribution of controlled substances; and Title 21 Section 846 making it illegal to conspire to commit any of the crimes set forth in the CSA.  Federal money laundering and related statutes which prohibit a variety of different types of financial activity involving the movement of drug proceeds may likewise be utilized.  The government may also pursue civil injunctions, and the forfeiture of drug proceeds, property traceable to such proceeds, and property used to facilitate drug violations.

 The Department is concerned about the Oakland Ordinance's creation of a licensing scheme that permits large-scale industrial marijuana cultivation and manufacturing as it authorizes conduct contrary to federal law and threatens the federal government's efforts to regulate the possession, manufacturing, and trafficking of controlled substances.  Accordingly, the Department is carefully considering civil and criminal legal remedies regarding those who seek to set up industrial marijuana growing warehouses in Oakland pursuant to licenses issued by the City of Oakland.  Individuals who elect to operate "industrial cannabis cultivation and manufacturing facilities" will be doing so in violation of federal law.  Others who knowingly facilitate the actions of the licensees, including property owners, landlords, and financiers should also know that their conduct violates federal law.  Potential actions the Department is considering include injunctive actions to prevent cultivation and distribution of marijuana and other associated violations of the CSA; civil fines; criminal prosecution; and the forfeiture of any property used to facilitate a violation of the CSA.  As the Attorney General has repeatedly stated, the Department of Justice remains firmly committed to enforcing the CSA in all states.

 I hope this letter assists the City of Oakland and potential licensees in making informed decisions regarding the cultivation, manufacture, and distribution of marijuana.

     Very truly yours,

     Melinda Haag
     United States Attorney
     Northern District of California

cc: Kamala D. Harris, Attorney General of the State of California
   Nancy E. O'Malley, Alameda County District Attorney

# EXHIBIT H



**U.S. Department of Justice**

*United States Attorney*
*District of Rhode Island*

Fleet Center                                    (401) 709-5000
50 Kennedy Plaza, 8th Floor              FAX (401) 709-5001
Providence, Rhode Island 02903

April 29, 2011

BY HAND

The Honorable Lincoln D. Chafee
Governor of the State of Rhode Island
222 State House
Providence, RI 02903-1196

        Re:  Medical Marijuana

Dear Governor Chafee:

        I write regarding the Rhode Island Department of Health's recent
notification to three Rhode Island entities, the Thomas C. Slater
Compassion Center, Inc., the Summit Medical Compassion Center, Inc.,
and the Greenleaf Compassionate Care Center, Inc., that their
applications to operate medical marijuana "compassion centers" have
been approved pursuant to the Edward O. Hawkins and Thomas C. Slater
Medical Marijuana Act, R.I.G.L. 21-28.6-1, et seq. (the Act).  It is
my understanding that each of these three entities now await the
issuance of a "registration certificate" by the Department of Health
authorizing their operation.

        I now write to ensure that there is no confusion regarding the
United States Department of Justice's view of state-sanctioned schemes
that purport to regulate the manufacture and distribution of medical
marijuana.

        As the Department has stated on many occasions, Congress has
determined that marijuana is a controlled substance.  Congress placed
marijuana in Schedule I of the Controlled Substances Act (CSA) and, as
such, growing, distributing, and possessing marijuana in any capacity,
other than as part of a federally authorized research program, is a
violation of federal law regardless of state laws permitting such
activities.

        The prosecution of individuals and organizations involved in the
trade of any illegal drugs and the disruption of drug trafficking
organizations is a core priority of the Department of Justice.  This
core priority includes the prosecution of business enterprises that

The Honorable Lincoln D. Chafee    -2-                April 29, 2011

unlawfully market and sell marijuana.  Accordingly, while the
Department of Justice does not focus its limited resources on
seriously ill individuals who use marijuana as part of a medically
recommended treatment regimen in compliance with state law as stated
in the October 2009 Memorandum of Deputy Attorney General David Ogden,
the Department of Justice maintains the authority to enforce the CSA
vigorously against individuals and organizations that participate in
unlawful manufacturing and distribution activity involving marijuana,
even if such activities are permitted under state law.   The
Department's investigative and prosecutorial resources will continue
to be directed toward these objectives.

        Consistent with federal law, the Department of Justice maintains
the authority to pursue criminal and/or civil actions for any CSA
violations whenever the Department determines that such legal action
is warranted.   This includes, but is not limited to, actions to
enforce the criminal provisions of the CSA, such as:

                - 21 U.S.C. § 841 (making it illegal to
                manufacture, distribute, or possess with intent
                to distribute any controlled substance, including
                marijuana);

                - 21 U.S.C. § 856 (making it unlawful to
                knowingly open, lease, rent, maintain, or use
                property for the manufacturing, storing, or
                distribution of controlled substances);

                - 21 U.S.C. § 860 (making it unlawful to
                distribute or manufacture controlled substances
                within 1,000 feet of schools, colleges,
                playgrounds, and public housing facilities, and
                within 100 feet of any youth centers, public
                swimming pools, and video arcade facilities);

                - 21 U.S.C. § 843 (making it unlawful to use any
                communication facility to commit felony
                violations of the CSA); and

                - 21 U.S.C. § 846 (making it illegal to conspire
                to commit any of the crimes set forth in the
                CSA).

In addition, federal money laundering and related statutes which
prohibit a variety of different types of financial activity involving
the movement of drug proceeds may likewise be utilized.   The
government may also pursue civil injunctions, and the forfeiture of
drug proceeds, property traceable to such proceeds, and property used
to facilitate drug violations.

        The Act, the registration scheme it purports to authorize, and
the anticipated operation of the three centers appear to permit large-

The Honorable Lincoln D. Chafee       -3-               April 29, 2011

scale marijuana cultivation and distribution.  Such conduct is
contrary to federal law and thus, undermines the federal government's
efforts to regulate the possession, manufacturing, and trafficking of
controlled substances.  Accordingly, the Department of Justice could
consider civil and criminal legal remedies against those individuals
and entities who set up marijuana growing facilities and dispensaries
as such actions are in violation of federal law.  Others who knowingly
facilitate those individuals and entities who set up marijuana growing
facilities and dispensaries, including property owners, landlords, and
financiers, should also know that their conduct violates federal law.
Potential actions the Department of Justice could consider include
injunctive actions to prevent cultivation and distribution of
marijuana and other associated violations of the CSA; civil fines;
criminal prosecution; seizure of the controlled substances and seizure
and forfeiture of any personal and real property used to facilitate
the production and distribution of controlled substances, or that is
derived from a violation of the CSA.  As the Attorney General of the
United States has repeatedly stated, the Department of Justice remains
firmly committed to enforcing the CSA in all states.

     I hope this letter provides clarification and assists the State
of Rhode Island and its potential licensees in making informed
decisions regarding the cultivation, manufacture, and distribution of
marijuana, as well as related financial transactions.

                              Sincerely,


                              Peter F. Neronha
                              United States Attorney


cc:   Michael Fine, M.D., Interim Director, Rhode Island Department of Health
      Gerald J. McGraw, Jr., Thomas C. Slater Compassion Center, Inc.
      Alan B. Weitberg, M.D., Summit Medical Compassion Center, Inc.
      Seth Bock, Greenleaf Compassionate Care Center, Inc.

# EXHIBIT I



**U.S. Department of Justice**

*United States Attorney*
*District of Hawaii*

---

PJKK Federal Building                      (808) 541-2850
300 Ala Moana Blvd., Room 6-100       FAX (808) 541-2958
Honolulu, Hawaii 96850

April 12, 2011

Jodie F. Maesaka-Hirata, Director
Department of Public Safety
State of Hawaii
919 Ala Moana Boulevard, 4th Floor
Honolulu, Hawaii 96814

      Re: <u>SENATE BILL 1458 SD2, HD2</u>

Dear Ms. Maesaka-Hirata:

      This replies to your letter dated April 6, 2011,
seeking guidance from the Attorney General and my office with
regards to S.B. No. 1458, which if enacted, would establish in
each County of this State for a five year test period at least
one "medical marijuana compassion center" for the manufacture and
distribution of marijuana.  Under this bill, such marijuana
distribution centers licensed by the State Department of Public
Safety, would be authorized to sell marijuana within the
respective counties in which they are located.  In addition, the
Bill also authorizes the sale of marijuana to other caregivers
and non-resident patients visiting from other states.  This
letter is written to ensure there is no confusion regarding the
Department of Justice's view of such distribution centers.

      As the Department has said on many prior occasions,
Congress has determined that marijuana is a controlled
substance.  Congress placed marijuana in Schedule I of the
Controlled Substances Act, 21 U.S.C. § 801 et. seq. ("CSA") and
as such, growing, distributing, and possessing marijuana in any
capacity, other than as part of a Federally authorized research
program, is a violation of Federal law regardless of state laws
permitting such activities.

      As a way of emphasizing the foregoing, the CSA's
penalties for felony marijuana offenses (manufacture,

Jodie F. Maesaka-Hirata
April 12, 2011
Page 2

distribution, possession with intent to distribute) should be considered:

       -1,000 or more marijuana plants, or 1,000 kilograms: 10 years - life imprisonment;

       -100 or more marijuana plants, or 100 kilograms: 5 - 40 years imprisonment;

       -50 marijuana plants or more, or more than 50 kilograms: up to 20 years imprisonment; and

       -Less than 50 marijuana plants, or less than 50 kilograms: up to 5 years imprisonment.

       The prosecution of individuals and organizations involved in the trade of any illegal drugs and the disruption of drug trafficking organizations is a core priority of the Department.  This core priority includes prosecutions of business enterprises that unlawfully market and sell marijuana. Accordingly, while the Department does not focus its limited resources on seriously ill individuals who use marijuana as part of a medically recommended treatment regimen in compliance with state law, we maintain the authority to enforce the CSA vigorously against individuals and organizations that participate in unlawful manufacturing and distribution activity of controlled substances, including marijuana, even if such activities are permitted under state law.

       Consistent with federal law, the Department maintains the authority to pursue criminal or civil actions for any CSA violations whenever the Department determines that such legal action is warranted.  This includes, but is not limited to, actions to enforce the criminal provisions of the CSA such as:

       -21 U.S.C. § 841 (making it illegal to manufacture, distribute, or possess with intent to distribute any controlled substance including marijuana);

       -21 U.S.C. § 856 (making it unlawful to knowingly open, lease, rent, maintain, or use property for the manufacturing, storing, or distribution of controlled substances);

Jodie F. Maesaka-Hirata
April 12, 2011
Page 3

-21 U.S.C. § 860 (making it unlawful to distribute or manufacture controlled substances within 1,000 feet of schools, colleges, playgrounds, and public housing facilities, and within 100 feet of any youth centers, public swimming pools, and video arcade facilities);

-21 U.S.C. § 843 (making it unlawful to use any communication facility to commit felony violations of the CSA); and

-21 U.S.C. § 846 (making it illegal to conspire to commit any of the crimes set forth in the CSA).

In addition, Federal money laundering and related statutes which prohibit a variety of different types of financial activity involving the movement of drug proceeds may likewise be utilized.  The Government may also pursue civil injunctions, and the forfeiture of drug proceeds, property traceable to such proceeds, and property used to facilitate drug violations.

This Bill would create a State licensing scheme which permits the marijuana distribution center in each county to support unlimited numbers of resident caregivers and patients and non-resident patients visiting from other states.  As such, this scheme would authorize large-scale marijuana manufacture and sales, which is contrary to Federal law and threatens the Federal government's efforts to regulate the possession, manufacturing, and trafficking of controlled substances.  Accordingly, the Department is carefully considering civil and criminal legal remedies if this Bill is enacted and becomes law, with respect to those who seek to create such marijuana distribution centers pursuant thereto.  Individuals who elect to operate such marijuana centers will be doing so in violation of Federal law.  Others who knowingly facilitate and assist the actions of the licensees (including property owners, landlords, and financiers) should also know that their conduct violates Federal law.  Potential actions the Department may consider include injunctive actions to prevent cultivation and distribution of marijuana and other associated violations of the CSA; civil fines; criminal prosecution; and the forfeiture of any property used to facilitate a violation of the CSA.  As the Attorney General has repeatedly stated, the Department of Justice remains firmly committed to enforcing the CSA in all states.

Jodie F. Maesaka-Hirata
April 12, 2011
Page 4

I hope this letter assists the State of Hawaii and potential licensees in making informed decisions regarding the cultivation, manufacture, and distribution of marijuana.

Very truly yours,

FLORENCE T. NAKAKUNI
United States Attorney

# EXHIBIT J

Westlaw.

2007 WL 2333160 (N.M.A.G.)

Page 1

2007 WL 2333160 (N.M.A.G.)

Office of the Attorney General
State of New Mexico

*1 August 6, 2007

Re: Request for Opinion - Exposure to Federal Prosecution

Dr. Alfredo Vigil
Cabinet Secretary Designate

Dear Dr. Vigil:

You have asked our advice whether a Department of Health ("Department") employee, or representative acting on behalf of the Department, may be subject to federal prosecution under the Controlled Substances Act ("CSA"), 21 U.S.C.A § 801 et seq., for implementation or management of the medical use marijuana registry and identification card program, if acting in accordance with the statutory mandate of the Lynn and Erin Compassionate Use Act ("Compassionate Use Act" or "Act"). You have also asked whether the Department may facilitate by regulatory authority the licensing of independent producers and production facilities for the purposes of cultivating, possessing and distributing **medical marijuana** pursuant to the Compassionate Use Act. Based on our examination of the relevant New Mexico constitutional, statutory and case law authorities, and on the information available to us at this time, we conclude that a Department employee, or representative acting on behalf of the Department, may be subject to federal prosecution under the Controlled Substances Act. Assuming arguendo that the Compassionate Use Act does not violate federal law, the Act grants express statutory authority to the Department to promulgate rules that list the requirements for the licensure of producers and cannabis production facilities and procedures to obtain a license.

There is a nationwide public policy debate regarding the propriety of state **medical marijuana** laws. The 2007 New Mexico legislature enacted the Lynn and Erin Compassionate Use Act to govern the use of **medical marijuana** in New Mexico. See 2007 N.M. Laws, Ch. 210. The law's enactment raised questions concerning the Department's exposure to federal prosecution under the CSA resulting from its implementation of the Compassionate Use Act and the scope of the Department's authority under that Act.

There are three rules of statutory construction that apply to this matter. First, the United States Supreme Court sets "the law of the land." Bradley v. Milliken, 519 F.2d 679, 680 (1975). Second, a state legislature can enact a statute that authorizes an agency to adopt implementing regulations. See New Mexico Petroleum Marketers Ass'n v. New Mexico Environmental Improvement Bd., 2007-NMCA-060, ¶ 13, 2007 WL 1593294. Third, an agency's authority is limited by statute and therefore regulations must be fully authorized by and consistent with the directions of the governing statute. See Howell v. Heim, 118 N.M. 500, 504, 882 P.2d 541 (1994); Chalamidas v. Environmental Improv. Div., 102 N.M. 63, 67, 691 P.2d. 64 (Ct. App.1984).

1. Exposure to Federal Prosecution Under the CSA

A series of United States Supreme Court and federal court cases govern the topic of legal exposure to federal

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

prosecution for **medical marijuana** activity. In 2001, the Supreme Court ruled: "The Controlled Substances Act ... prohibits the manufacture and distribution of various drugs, including marijuana." United States v. Oakland Cannabis Buyers' Co-Op., 532 US. 483, 486 (2001). The Court rejected the concept of a **medical marijuana** exemption. This means the Court has concluded that the manufacture and distribution of marijuana, even for **medical marijuana** use, is illegal. Federal authorities have relied on this ruling to enter into homes to destroy **medical marijuana** and to prosecute citizens for growing **medical marijuana**—even when those citizens were acting pursuant to state **medical marijuana** laws. See Gonzales v. Raich, 545 U.S. 1 (2005) (holding that the federal Commerce Clause prohibits the manufacture, distribution, or possession of marijuana by intrastate growers and users of marijuana for medical purposes—under a preliminary injunction relief analysis); United States v. Rosenthal, 266 F.Supp.2d 1068, 1077 (N.D. Cal. 2003) (defendant who openly grew marijuana for use in a local **medical marijuana** program authorized by California state law was prosecuted and convicted of federal criminal violation and served one day in jail) aff'd in part, rev'd in part, 454 F.3d 943 (9th Cir. 2006).

**\*2** The Attorney General's Office has the statutory duty to provide legal advice and representation to state agencies. See NMSA 1978, § 8-5-2 (1975). Therefore, while proponents of state **medical marijuana** laws may argue that federal authorities have shown little enthusiasm for prosecuting patients beyond the above-mentioned cases and that federal authorities have shown no interest in prosecuting state agencies for implementing a marijuana registry and identification card program, we must caution that the Department and its employees, or representatives acting on behalf of the Department, may be subject to federal prosecution for implementing the Compassionate Use Act. [FN1]

Should an employee or a representative of the Department be charged with violating the CSA, that person likely would be unable to seek legal representation from the Attorney General's office. By statute, "the attorney general of New Mexico is directed to act, if requested, as attorney for any officer, deputy, assistant, agent or employee of the state or of a state institution in the event such person is named as a party in any civil action in connection with an act growing out of the performance of his duty ...." NMSA 1978, § 8-5-15 (1959) (emphasis added). See also NMSA 1978, § 36-1-21 (1905) (providing for fine and removal from office if attorney general "shall consult with any accused defendant, or in any other manner shall aid the defense of any person accused of any crime or misdemeanor in this state ...."). This means the legislature has not authorized our office to defend state officers and employees in criminal cases.

2. Department's Authority to Promulgate Implementing Regulations

The Department's authority to regulate the licensing of independent producers and production facilities for the purposes of cultivating, possessing and distributing **medical marijuana** is governed by the Compassionate Use Act. Assuming arguendo that it does not violate federal law, the Compassionate Use Act grants express statutory authority to the Department to promulgate "rules in accordance with the State Rules Act ... [that] identify requirements for the licensure of producers and cannabis production facilities and set forth procedures to obtain a license." 2007 N.M. Laws, Ch. 210, § 7(A)(5). The deadline for these regulations is October 1, 2007. "[R]egulations ... are presumptively valid and will be upheld if reasonably consistent with the authorizing statutes." See New Mexico Mining Ass'n v. New Mexico Water Quality Control Comm., 2007 -NMCA- 010, ¶ 12, 141 N.M. 41, 46. Thus, the regulations will be presumptively valid under state law if promulgated in a manner that is procedurally and substantively consistent with the governing statute. [FN2]

Your request to us was for a formal Attorney General's Opinion on the matters discussed above. Such an opinion would be a public document available to the general public. Although we are providing you our legal advice in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2007 WL 2333160 (N.M.A.G.)

Page 3

the form of a letter instead of an Attorney General's Opinion, we believe this letter is also a public document, not subject to the attorney-client privilege. Therefore, we may provide copies of this letter to the public.

Sincerely,
*3 Steve Suttle

Zachary Shandler
Assistant Attorneys General

[FN1]. As discussed in the text, patients who use **medical marijuana** pursuant to the Compassionate Use Act are also at risk of federal prosecution. The Legislature's Fiscal Impact Report on Senate Bill 523, the bill enacted as the Compassionate Use Act, noted: "The Office of the Attorney General has noted that until such time as the U.S. Attorney General or the Congress make possession of medical cannabis lawful under federal law, a contrary state law gambles with the personal liberty of those who use medical cannabis as authorized by state law but that still subjects them to criminal prosecution under federal law."
    www.legis.state.nm.us/Sessions/07%20Regular/firs/SB0523.html.
    See also www.legis.state.nm.us/Sessions/05%20regular/firs/SB0492.html.

[FN2]. It is our understanding that the Department initially deliberated whether to promulgate regulations for the marijuana registry and identification card program by emergency regulation, but elected to follow the Act's provisions governing the issuance of temporary certificates for patient participation in medical use of cannabis program. See 2007 N.M. Laws, Ch. 210, § 10.

2007 WL 2333160 (N.M.A.G.)
END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT K

U.S. Department of Justice

United States Attorney
District of Maine

100 Middle Street                    (207) 780-3257
6ᵗʰ Floor, East Tower               TTY (207) 780-3060
Portland, ME 04101                   Fax (207) 780-3504
                                     www.usdoj.gov/usao/me

May 16, 2011

Hon. Earle L. McCormick
Maine State Senate
100 State House Station
Augusta, ME 04333-0100

Hon. Meredith N. Strang Burgess
Maine House of Representatives
100 State House Station
Augusta, ME 04333-0100

Re: Medical Marijuana Act Legislation

Dear Senator McCormick and Representative Strang Burgess:

I am in receipt of your letter inquiring whether this office has concerns about legislation to amend Maine's Medical Marijuana Act (MMA) now pending before the 125ᵗʰ Legislature and your Committee on Health and Human Services. I write to ensure that there is no confusion regarding the United States Department of Justice's view on such legislative proposals.

We can neither endorse nor comment on the specifics of the MMA or the proposed amendments other than to advise you those activities by users (patients), caregivers and dispensaries remain illegal under the federal Controlled Substances Act (CSA).

This office has consulted with leadership offices within the Department of Justice to assure that our response is consistent with replies of United States Attorneys in other districts.

Congress has determined that marijuana is a controlled substance and has placed marijuana in Schedule I of the CSA. As such, growing, distributing, and possessing marijuana in any capacity, other than as part of a federally authorized research program, is a violation of federal law regardless of state laws permitting such activities.

The prosecution of individuals and organizations involved in the trade of any illegal drugs and the disruption of drug trafficking organizations are core priorities of the Department. This priority includes prosecution of individuals and enterprises that unlawfully cultivate and sell marijuana. Accordingly, while the Department does not focus its limited resources on seriously ill individuals who use marijuana as part of a medically recommended treatment regimen in compliance with state law as stated in the October 2009 Memorandum by then Deputy Attorney General David Ogden, we will enforce the CSA vigorously against individuals and organizations

MAY 17 2011

May 16, 2011
Hon. Earle M. McCormick
Hon. Meredith N. Strang Burgess
Page 2


that participate in unlawful manufacturing and distribution activity involving marijuana, even if such activities are permitted under state law. The Department's investigative and prosecutorial resources will continue to be directed toward these objectives.

It is well settled that no state can authorize violations of federal law. Claims of compliance with state or local law may mask operations inconsistent with the terms, conditions or purposes of those federal laws.

Consistent with federal law, the Department maintains the authority to pursue criminal or civil actions for any CSA violations whenever it is determined that such legal action is warranted. This includes, but is not limited to, actions regarding the manufacturing, distribution or possession with intent to distribute any controlled substance including marijuana, as well as conduct to knowingly open, lease, rent, maintain, or use property for the manufacturing, storing, or distribution of controlled substances; and, conduct to conspire to commit any of the crimes set forth in the CSA. Federal money laundering and related statutes, which prohibit a variety of different types of financial activity involving the movement of drug proceeds, may likewise be utilized. The government may also pursue civil injunctions, and the forfeiture of drug proceeds, properly traceable to such proceeds, and property used to facilitate drug violations.

The Department is concerned about recent efforts to amend Maine's Medical Marijuana Act, as the legislation involves conduct contrary to federal law and threatens the federal government's efforts to regulate controlled substances. The Department of Justice remains firmly committed to enforcing the CSA in all states.

Any decision to pursue civil or criminal remedies will be made on a case by case basis and using the prosecutorial discretion vested in this office.

I hope this letter provides clarification and assists the State of Maine to make informed decisions regarding legislative efforts on the subject of medical marijuana.

Very truly yours,

Thomas E. Delahanty II
United States Attorney

TED/br
cc:    William J. Schneider, Attorney General
       Jane Orbeton