Scott Michelman (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
1101 Pacific Ave. Ste. 333; Santa Cruz, CA 95060
(831) 471-9000      *smichelman@aclu.org*

Daniel J. Pochoda (SBA No. 021979)
ACLU FOUNDATION OF ARIZONA
77 E. Columbus St. Ste. 205; Phoenix, AZ  85012
(602) 650-1854      *dpochoda@acluaz.org*

Lisa T. Hauser (SBA No. 006985)
Cameron C. Artigue (SBA No. 011376)
GAMMAGE & BURNHAM
Two North Central, 15th Fl.; Phoenix, AZ 85004
(602) 256-0566      *lhauser@gblaw.com*

    *Counsel for Defendant Arizona Medical*
    *Marijuana Association*

Thomas W. Dean (SBA No. 015700)
Post Office Box J; Flagstaff, AZ 86002
(928) 247-6132      *attydean@gmail.com*

    *Counsel for Defendant Arizona Association of*
    *Dispensary Professionals*

Ken Frakes (SBA No. 021776)
ROSE LAW GROUP, PC
6613 N. Scottsdale Rd., Ste. 200
Scottsdale, AZ 85250
(480) 505-3931
*KFrakes@roselawgroup.com*

    *Counsel for Defendants Serenity*
    *Arizona, Holistic Health*
    *Management, Levine,*
    *Pennypacker, Flores,*
    *Christensen, Pollock, and Silva*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STATE OF ARIZONA; JANICE K. BREWER; WILL HUMBLE; ROBERT C. HALLIDAY,     *Plaintiffs*, <br>   *v.* <br> UNITED STATES; U.S. DEP'T OF JUSTICE; ERIC H. HOLDER; DENNIS K. BURKE; ARIZ. ASS'N OF DISPENSARY PROFESSIONALS, INC.; JOSHUA LEVINE; PAULA PENNYPACKER; NICHOLAS FLORES; JANE CHRISTENSEN; PAULA POLLOCK; SERENITY ARIZONA, INC.; HOLISTIC HEALTH MGMT, INC.; JEFF SILVA; ARIZ. MEDICAL MARIJUANA ASS'N; DOES I-XX,     *Defendants*. | **No. CV-11-01072-PHX-SRB** <br> **Hon. Susan R. Bolton** <br><br><br> **DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM, WITH MEMORANDUM OF POINTS AND AUTHORITIES** <br><br><br> **Oral Argument Requested** |

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, undersigned counsel state on behalf of all Defendants joining in this motion that none of the nongovernmental corporate parties joining in this motion has any parent corporation or any publicly held corporation that owns 10% or more of its stock.  A supplemental disclosure statement will be filed upon any change in the information provided herein.

/s/ Scott Michelman
Scott Michelman (admitted *pro hac vice*)
   *smichelman@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
1101 Pacific Avenue, Suite 333
Santa Cruz, CA 95060
(831) 471-9000

   *Counsel for Defendant Arizona Medical Marijuana Association*

/s/ Thomas W. Dean
Thomas W. Dean (SBA No. 015700)
   *attydean@gmail.com*
Post Office Box J
Flagstaff, AZ 86002
(928) 247-6132

   *Counsel for Defendant Arizona Association of Dispensary Professionals*

/s/ Ken Frakes
Ken Frakes (SBA No. 021776)
   *KFrakes@roselawgroup.com*
ROSE LAW GROUP, PC
 6613 N. Scottsdale Road, Suite 200
Scottsdale, AZ 85250
(480) 505-3931

   *Counsel for Defendants Serenity Arizona, Holistic Health Management, Levine, Pennypacker, Flores, Christensen, Pollock, and Silva*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................................... 3

ARGUMENT .............................................................................................4

    I.  This Court Lacks Jurisdiction Because A State Cannot Use Federal Court Either To Obtain An Advisory Opinion Or To Validate Or Invalidate Its Own Law, And Because This Matter Is Unripe. ..............................................................................4

      A.  The State's Failure To Take A Position Reveals The Absence Of A Case Or Controversy: Rather, The State Requests An Advisory Opinion.............................. 5

      B.  The Federal Courts Will Not Adjudicate A State's Attempt To Validate Or Invalidate Its Own Law...........................................................................7

      C.  Because State Officials Do Not – And May Never – Face A Concrete Threat Of Prosecution, This Suit Is Unripe.............................................................. 9

    II.  Even If Jurisdiction Lies, The State Has Failed To State A Viable Claim, Because Neither Of Its Requested Declarations Would Be Legally Correct............................. 11

    CONCLUSION ..................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) ........................................................5

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) .................................5

*Baker v. Carr*, 369 U.S. 186 (1962) ...........................................................................5, 6

*Baxley v. Rutland*, 409 F. Supp. 1249 (M.D. Ala. 1976)......................................................9

*City of Garden Grove v. Super. Ct.*, 68 Cal. Rptr. 3d 656 (Cal. Ct. App. 2007) ..............16

*Clinton v. Acequia, Inc.*, 94 F.3d 568 (9th Cir. 1996) ........................................................9

*County of San Diego v. San Diego NORML*, 81 Cal. Rptr. 3d 461 (Cal. Ct. App. 2008)..................................................................................................        15, 16

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) .......................................16

*Donelon v. La. Div. of Admin. Law ex rel. Wise*, 522 F.3d 564 (5th Cir. 2008)................8

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998) ........................................................6

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1 (1983)......................8

*Gonzales v. Oregon*, 546 U.S. 243 (2006)........................................................................17

*Gov't Employees Ins. Co. v. Dizol,* 133 F.3d 1220 (9th Cir. 1998) ...................................4

*Hayburn's Case,* 2 Dall. 409 (1792)...................................................................................7

*Illinois v. City of Chicago*, 137 F.3d 474 (7th Cir. 1998)...................................................8

*Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of Los Angeles*, 611 F. Supp. 315 (C.D. Cal. 1984) .................................................................................................8

*Lancey v. United States*, 356 F.2d 407 (9th Cir. 1966) ...................................................14

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)...............................................5

*Missouri ex rel. Mo. Hwy. & Transp. Comm'n v. Cuffley*, 112 F.3d 1332 (8th Cir. 1997) 8

*Muskrat v. United States,* 219 U.S. 346 (1911)..................................................................7

*Poe v. Ullman*, 367 U.S. 497 (1961)..................................................................................9

*Printz v. United States*, 521 U.S. 898 (1997)..................................................................17

*Qualified Patients Ass'n v. City of Anaheim*, 115 Cal. Rptr. 3d 89 (Cal. Ct. App. 2010)..............................................................................................................12, 16

*Republican Party of Guam v. Gutierrez*, 277 F.3d 1086 (9th Cir. 2002)..........................7

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ..................................................12

*S. Blasting Servs., Inc. v. Wilkes County*, 288 F.3d 584 (4th Cir. 2002) .......................... 15

*San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) ............... 10

*Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984) .............................................. 12, 15

*Smith v. Indiana*, 191 U.S. 138 (1903) ................................................................... 8

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ................................... 7

*United Public Workers v. Mitchell*, 330 U.S. 75 (1947) .......................................... 9

*United States v. Cannabis Cultivators Club*, 5 F. Supp. 2d 1086 (N.D. Cal. 1998) ......... 12

*United States v. Ciambrone*, 750 F.2d 1416 (9th Cir. 1984) ................................... 14

*United States v. Lennick*, 18 F.3d 814 (9th Cir. 1994) .......................................... 13

*United States v. Lopez*, 482 F.3d 1067 (9th Cir. 2007) .......................................... 14

*United States v. Marbella*, 73 F.3d 1508 (9th Cir. 1996) ...................................... 15

*United States v. Mich. Dep't of Cmty. Health*, No. 1:10–mc–109, 2011 WL 2182418
   (W.D. Mich. June 3, 2011) ................................................................... 14

*United States v. Rosenberg,* 515 F.2d 190 (9th Cir. 1975) ..................................... 12

*United States v. Rosenthal*, 454 F.3d 943 (9th Cir. 2006) ..................................... 12

*United States v. Singh*, 532 F.3d 1053 (9th Cir. 2008) .......................................... 13

*Wyeth v. Levine*, 129 S. Ct. 1187 (2009) .............................................................. 15

## Statutes

18 U.S.C. § 2 .................................................................................................... 13

18 U.S.C. § 3 .................................................................................................... 13

18 U.S.C. § 4 .................................................................................................... 14

18 U.S.C. § 371 ................................................................................................ 13

18 U.S.C. § 1956 ............................................................................................... 14

21 U.S.C. § 812 ................................................................................................ 13

21 U.S.C. § 841 ................................................................................................ 13

21 U.S.C. § 841(a) ............................................................................................. 3

21 U.S.C. § 843(b) ............................................................................................ 13

21 U.S.C. § 844(a) ............................................................................................. 3

21 U.S.C. § 846 ................................................................................................ 13

21 U.S.C. § 856 ........................................................................................... 13

21 U.S.C. § 903 ............................................................................... 3, 12, 15

A.R.S. § 36-664 .......................................................................................... 14

A.R.S. § 36-2220 ........................................................................................ 14

A.R.S. § 36-2803 .......................................................................................... 3

A.R.S. § 36-2804 .......................................................................................... 4

A.R.S. §§ 36-2804.01-.05 ............................................................................ 4

A.R.S. § 36-2806 .......................................................................................... 4

A.R.S. § 36-2807 .......................................................................................... 4

A.R.S. § 36-2809 .......................................................................................... 4

A.R.S. § 36-2810 .......................................................................................... 4

A.R.S. § 36-2811 .......................................................................................... 3

A.R.S. § 36-2817 .......................................................................................... 4

A.R.S. § 36-3005(A)(3) .............................................................................. 14

## Other Authorities

13B Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3566 (3d ed. 2008) ...................................................................................... 8

Howard Fischer, *Federal Prosecutor: Brewer, Horne Twisting Medical Marijuana Memo*, East Valley Tribune.com, May 26, 2011 .................................... 10, 11

Mary K. Reinhart, *Ariz. To Sue Over Medical-pot Law*, Ariz. Republic, May 27, 2011 .. 11

Memo. of Deputy Att'y Gen. James M. Cole (June 29, 2011) ........................ 11

Defendants Arizona Medical Marijuana Association, Arizona Association of Dispensary Professionals, Serenity Arizona, Holistic Health Management, Joshua Levine, Paula Pennypacker, Nicholas Flores, Jane Christensen, Paula Pollock, and Jeff Silva hereby move, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss this action for lack of subject-matter jurisdiction or in the alternative for failure to state a claim upon which relief can be granted.

### INTRODUCTION AND SUMMARY OF ARGUMENT

This is a peculiar case. The voters of Arizona, joining 15 other states and the District of Columbia in heeding mounting evidence of the efficacy of marijuana as medicine, have chosen to decriminalize and regulate the use of marijuana for medical purposes. Federal law forbids the possession, cultivation, transportation, or sale of marijuana, and federal prosecutors across the country have issued inconsistent statements about whether they will seek to prosecute state-compliant medical marijuana users, growers and distributors. U.S. Attorneys in Washington State have even implied that state officials regulating medical marijuana there could face prosecution. Although the U.S. Attorney for the District of Arizona has made no such claim, Arizona professes concern about its officials' potential liability under federal law. At first glance, this situation may look like a concrete legal dispute: federal legislative intransigence in the face of the reasoned judgment of approximately one third of the states has combined with mixed signals from federal law enforcement to foster legal uncertainty, stifle scientific development, and worst of all burden seriously ill patients for whom medical marijuana provides unique relief.

1

What makes this lawsuit peculiar is that, instead of waiting for an actual threat of prosecution against Arizona officials and instead of seeking a judicial ruling that federal law simply *does not criminalize* the actions of state officials implementing Arizona's medical marijuana law, Arizona and its officials have asked this Court for either of two *different* declaratory judgments: *either* that compliance with its medical marijuana law provides a "safe harbor" against federal prosecution, *or* that the state law is preempted entirely. But this is a false choice: the invalidity of one of these alternatives does not imply the correctness of the other; in fact, neither declaration would be legally correct. Stranger still, Arizona does not seem to profess any preference between the two.

These various novelties of Arizona's lawsuit doom it to fail.

Regarding jurisdiction, first, Arizona's refusal to take a concrete position supporting either of the two requested, diametrically opposed declarations deprives this lawsuit of a genuine controversy between plaintiffs and defendants. Without a view of its own, Arizona is merely asking this Court to resolve "uncertainty" in the law – in other words, to issue an impermissible advisory opinion. Second, even if there were a case or controversy, state officials cannot use the federal courts as a vehicle either to validate, or to attack, their own laws. Third, since no state official faces a genuine threat of prosecution, the lawsuit is unripe.

If this Court reaches the merits, Arizona's two alternative requests for relief are both foreclosed by law. State law cannot immunize federal criminal conduct. Nor would the nullification of Arizona's law on the basis of federal preemption be legally correct. There is no conflict between state and federal law here, as it is possible to comply with

2

both state and federal law, and federal law enforcement can proceed against violators of federal law just as easily whether the state prohibits the same conduct or not.  To hold otherwise would contravene the Tenth Amendment by forcing the criminal codes of the sovereign states to march in lockstep with federal criminal law.

For these reasons, this Court should dismiss this case for lack of jurisdiction or in the alternative for failure to state a claim upon which relief can be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The federal Controlled Substances Act ("CSA") criminalizes the possession, cultivation, transportation, or sale of marijuana.  *See* 21 U.S.C. §§ 841(a), 844(a) .  But the CSA also allows the states to continue their longstanding practice of enacting varying drug laws: preemption under the CSA is limited to the narrow set of circumstances in which there is a "positive conflict" between state and federal law.  21 U.S.C. § 903.  Thus, Congress accorded the states wide latitude to define the scope of their own penal drug laws and to decide how to enforce them.

In 2010, the voters of Arizona enacted the Arizona Medical Marijuana Act ("AMMA" or "Act"), which narrowed the reach of state marijuana law by exempting seriously ill Arizonans, as well as their caregivers, from prosecution under state law for the cultivation, possession, and use of marijuana for medical purposes.  A.R.S. § 36-2811.  It also exempts from criminal penalties a limited number of certified, nonprofit medical marijuana dispensaries for the purpose of serving qualifying patients.  *Id.*

The Act charges the Arizona Department of Health Services ("ADHS") with implementation of the program.  *See* A.R.S. § 36-2803.  The Act requires ADHS to

3

process applications of prospective patients, caregivers, and dispensary agents, and issue

registry identification cards to eligible applicants.  A.R.S. §§ 36-2804.01-.05.  ADHS

must develop a secure online system through which law enforcement and dispensary

agents may verify identification cards.  A.R.S. § 36-2807.  ADHS must process

applications from, and in some cases certify, prospective nonprofit medical marijuana

dispensaries.  A.R.S. §§ 36-2804, 36-2806.  ADHS must protect the confidentiality of

identifying information obtained in the registration process; administer a "medical

marijuana fund" by collecting various fees, fines, and donations; and report to the state

legislature annually about the program.  A.R.S. §§ 36-2809, 36-2810, 36-2817.  Nothing

in the AMMA or any other state law purports to exempt qualifying patients, designated

caregivers, or dispensary agents from arrest or prosecution under federal law.

On May 27, 2011, despite the absence of any indication that any Arizona official

could face federal criminal liability for enforcing the AMMA, Arizona and a number of

its officials (collectively, "the state" or "Plaintiffs") filed this lawsuit for declaratory

relief, seeking a ruling *either* that state law immunizes any violations of federal law *or*

that the AMMA is itself preempted by federal law.

## ARGUMENT

### I.  This Court Lacks Jurisdiction Because A State Cannot Use Federal Court Either To Obtain An Advisory Opinion Or To Validate Or Invalidate Its Own Law, And Because This Matter Is Unripe.

"A lawsuit seeking federal declaratory relief must first present an actual case or

controversy within the meaning of Article III[.]"  *Gov't Employees Ins. Co. v. Dizol,* 133

F.3d 1220, 1222-23 (9th Cir. 1998) (en banc) (citation omitted).

4

According to the complaint, the state seeks either of two diametrically opposed declaratory judgments: in its own words, the state requests that the Court hold either that "strict compliance and participation by citizens and state employees in the AMMA provides a safe harbor from federal prosecution," or that "the AMMA is preempted" by federal law.  Compl. ¶ 32; *see also id.* ¶ 170 (seeking "a declaration ... whether the AMMA complies with federal law ... or whether the AMMA should be declared preempted[.]").  The nature of this request, combined with the absence of a specific threat of prosecution of state employees, exposes three fundamental jurisdictional flaws in the state's lawsuit.

### A.  The State's Failure To Take A Position Reveals The Absence Of A Case Or Controversy: Rather, The State Requests An Advisory Opinion.

The first difficulty with the state's position is that it does not have a position at all.  The state has asked this Court either to uphold or strike down its law, but the state seems not to care which alternative this Court chooses.  In the very case upholding the constitutionality of the Declaratory Judgment Act the state here seeks to employ, the Supreme Court explained that a matter is justiciable under Article III only where "[t]he controversy [is] definite and concrete, touching the legal relations of *parties having adverse legal interests*."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (emphasis added, citation omitted); *accord, e.g., MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).  This is necessary "to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions[.]"  *Baker v. Carr*, 369 U.S. 186, 204 (1962).

Here, the state takes no position on whether its law is constitutional, and thus has not established itself as a genuine adversary to any of the myriad entities it has named as defendants.  Tellingly, the state avers that "[a] controversy has arisen and now exists between Plaintiffs and Defendants and, *indeed among Defendants*, relating to their rights and duties."  Compl. ¶ 169 (emphasis added).  Having named two sets of John Doe parties defined by their opposing interests – as defined by the state, Does I-X support the AMMA, and Does XI-XX oppose it, *see* Compl. ¶¶ 167-68 – the state can make the logical (if circular) claim that a conflict exists "among Defendants."  But that is not the test of a case or controversy: a dispute must exist between defendants and *plaintiffs.  See*, *e.g., Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998) ("[C]ourts will not pass upon abstract, intellectual problems, but adjudicate concrete, *living contests between adversaries*." (citations, internal quotation marks, and source's alteration marks omitted, and emphasis added)).  The state seems to hope that the Court will allow some conflict among any subset of the parties to qualify.  But it is impossible for the state to litigate with "concrete adverseness," *Baker*, 369 U.S. at 204, if it is indifferent to the outcome of its lawsuit.

In fact, the only interest of its own the state has identified is to "ascertain [its] rights and duties," Compl. ¶ 171, or the resolution of legal "uncertainty."  Compl. ¶ 165; *see also id.* ¶ 28 (demanding "reasonable certainty with respect to the application of both state and federal law").  This abstract interest in legal "certainty" does not a case or controversy make.  A suit seeking nothing but "certainty" is by definition asking this Court to render an advisory opinion – a practice "disapproved by [the Supreme] Court

6

from the beginning" of the Republic.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (citing *Muskrat v. United States,* 219 U.S. 346 (1911), and *Hayburn's Case,* 2 Dall. 409 (1792)).

In sum, the state has no position regarding how this Court should answer the question the state has asked; the state desires only that the question be answered.  This posture reveals the absence of a genuine and concrete controversy between plaintiffs and defendants, and reduces this lawsuit to a plea for an impermissible advisory opinion.

**B.  The Federal Courts Will Not Adjudicate A State's Attempt To Validate Or Invalidate Its Own Law.**

In addition to the state's failure to allege a concrete dispute between plaintiffs and defendants, there is a second jurisdictional flaw here: federal courts do not adjudicate suits by state officials or entities either to validate or to invalidate a state law, or (relatedly) suits in which state officials express abstract policy disagreements with a law.

As to suits asking a federal court to declare a state law valid or invalid in light of federal law, the decision in *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086 (9th Cir. 2002), is controlling.  There, plaintiffs asked the court to declare that a particular law of Guam was valid based on the powers apportioned to the branches of the Guamanian government by federal law, but the Ninth Circuit held it lacked jurisdiction over a suit simply to declare the validity of a local law under federal law.  *Id.* at 1089-90.

The Supreme Court has explained this important limitation on federal jurisdiction:

There are good reasons why the federal courts should not entertain suits by the States to declare the validity of their regulations despite possibly conflicting federal law. States are not significantly prejudiced by an inability to come to federal court for a declaratory judgment in advance of a possible injunctive suit by a person subject to federal regulation. They have a variety of means by which they

7

can enforce their own laws in their own courts, and they do not suffer if the
preemption questions such enforcement may raise are tested there.

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 21 (1983); *accord,*

*Missouri ex rel. Mo. Hwy. & Transp. Comm'n v. Cuffley*, 112 F.3d 1332 (8th Cir. 1997)

("[A] declaratory judgment suit brought by a state to uphold the constitutionality of its

action is not within the federal-question jurisdiction of the federal courts."); *Int'l Soc'y*

*for Krishna Consciousness of Cal., Inc. v. City of Los Angeles*, 611 F. Supp. 315, 318

(C.D. Cal. 1984); 13B Wright, Miller & Cooper, *Federal Practice and Procedure:*

*Jurisdiction* § 3566, at 286 (3d ed. 2008) ("[T]here is no federal jurisdiction of a suit by a

state for a declaration of the validity of state law[.]").

Nor can state officials use the federal courts to vindicate a policy disagreement

with their own state's law, except where a state official has a concrete personal stake in

the issue.  *See, e.g.*, *Smith v. Indiana*, 191 U.S. 138, 149 (1903) (county tax auditor

lacked standing to challenge a state property tax statute in federal court because the

performance or nonperformance of the auditor's duties under the challenged law was "of

no personal benefit to him"); *Donelon v. La. Div. of Admin. Law ex rel. Wise*, 522 F.3d

564, 566 (5th Cir. 2008) ("[S]tate officials lack standing to challenge the constitutional

validity of a state statute when they are not adversely affected by the statute, and their

interest in the litigation is official, rather than personal."); *see generally Illinois v. City of*

*Chicago*, 137 F.3d 474, 476 (7th Cir. 1998) (Easterbrook, J.) ("How can a state complain

about its own statute?  Relieving a state of the consequences of a self-inflicted wound

would be a novel mission for a federal court[.]"); *Baxley v. Rutland*, 409 F. Supp. 1249,

1257 (M.D. Ala. 1976) ("May the State attack in federal court its own statutes as

violative of the Constitution of the United States?  That seems incongruous.").

Here, the alleged personal interest of the state's officials is in whether they could

be prosecuted by the federal government for discharging their duties under state law.  But

this personal interest is not directed at the validity or invalidity of *state* law; the personal

interest concerns the state officials' potential liability under *federal* law.  *See* Compl. ¶

28.  Therefore the Plaintiffs have no personal interest in the validity or invalidity of state

law, and it is inappropriate for a federal court to adjudicate an abstract attempt to have the

state's law declared valid or invalid.

### C.  Because State Officials Do Not – And May Never – Face A Concrete Threat Of Prosecution, This Suit Is Unripe.

Even assuming there is a controversy capable of adjudication here, the controversy

is not yet ripe for adjudication.  "[A] case is not ripe where the existence of the dispute

itself hangs on future contingencies that may or may not occur."  *Clinton v. Acequia, Inc.*,

94 F.3d 568, 572 (9th Cir. 1996).  The Supreme Court has repeatedly held that challenges

to the validity of criminal laws are unripe when prosecution is speculative.  *See, e.g.,*

*United Public Workers v. Mitchell*, 330 U.S. 75, 91 (1947) (challenge to bar on

government employee political activities unripe where "[n]o threat of interference ... with

rights of these appellants appears beyond that implied by the existence of the law and the

regulations"); *Poe v. Ullman*, 367 U.S. 497, 501-02 (1961) (plurality opinion) (challenge

to ban on contraceptive devices unripe because no prosecution under the challenged law

was pending and only one prosecution had ever been brought under the law).  Likewise,

the Ninth Circuit has held that a challenge to a criminal law is nonjusticiable where

plaintiffs lack intent to violate the law and there is neither a specific threat of prosecution nor a history of prosecution under the law.  *See San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126-29 (9th Cir. 1996).  "Significantly, the mere possibility of criminal sanctions applying does not of itself create a case or controversy."  *Id.* at 1126 (citation and internal quotation marks omitted).

Here, the state asks the Court to interpret the federal Controlled Substances Act prior to any enforcement action being taken or threatened by the United States against the state or any of its employees.  Plaintiffs note that federal prosecutors in *other* judicial districts have implied the possibility of prosecution of *another state's* officials under a proposed regulatory regime *different* from Arizona's.  Compl. ¶ 113; Howard Fischer, *Federal Prosecutor: Brewer, Horne Twisting Medical Marijuana Memo*, East Valley Tribune.com, May 26, 2011 (noting the differences between Washington and Arizona law, as explained by the U.S. Attorney for the Eastern District of Washington).[1]  But it is simply not the case that threats of enforcement against someone – anyone – can stand in for a threat of enforcement against the plaintiffs themselves.  In fact, Arizona's Department of Health Services asked the U.S. Attorney's office for guidance regarding whether Arizona state employees involved in implementing and administering the AMMA might be subjected to federal prosecution.  Compl. ¶ 24.  In the response letter from Dennis Burke, the U.S. Attorney for the District of Arizona, state employees were conspicuously absent from the categories of persons and organizations listed as subject to federal prosecution under the CSA.  Compl. ¶ 25 & Ex. B.  This omission was

---

[1] Available at:  http://www.eastvalleytribune.com/arizona/politics/article_62e3877a-87ee-11e0-95eb-001cc4c03286.html.

intentional, Mr. Burke subsequently confirmed.  *See* Fischer, *supra* (quoting Dennis Burke: "It's fair to read into my letter what I included and what I didn't.  And if I didn't include state employees, I think that's telling in itself.").  In fact, on the day this case was filed, Mr. Burke made clear he does *not* intend to prosecute state workers.  *See* Mary K. Reinhart, *Ariz. To Sue Over Medical-pot Law*, Ariz. Republic, May 27, 2011, at B1 (quoting Dennis Burke: "We have no intention of targeting or going after people *who are implementing* or who are in compliance with state law." (emphasis added)).[2]  Subsequent Department of Justice guidance about state medical marijuana laws has made no mention of the possibility that state officials could be prosecuted.  *See* Memo. of Deputy Att'y Gen. James M. Cole (June 29, 2011).[3]

The possibility that Arizona state employees might be prosecuted for fulfilling their duties under the AMMA is purely speculative and not sufficiently concrete to generate a "case or controversy."  Therefore this action should be dismissed as unripe.

## II.  Even If Jurisdiction Lies, The State Has Failed To State A Viable Claim, Because Neither Of Its Requested Declarations Would Be Legally Correct.

The state's two alternatively-stated requests for relief – either declare the state law void or declare that "strict compliance and participation in the AMMA provide[] a safe harbor from federal prosecution," Compl. Prayer for Relief ¶ B – present a false choice between two legally incorrect results.

---

[2] Available at:  http://www.azcentral.com/news/election/azelections/articles/2011/05/27/ 20110527arizona-medical-marijuana-federal-lawsuit.html.
[3] Available at:  http://www.aclu.org/files/drugpolicy/june_2011_guidance_regarding_ medical_mariju.pdf.

First, the existence of a state statute decriminalizing certain conduct cannot provide a "safe harbor" from federal laws criminalizing that conduct. State law cannot immunize a violation of federal law. *See United States v. Rosenthal*, 454 F.3d 943, 948 (9th Cir. 2006); *United States v. Rosenberg,* 515 F.2d 190, 198 n.14 (9th Cir. 1975); *United States v. Cannabis Cultivators Club*, 5 F. Supp. 2d 1086, 1100 (N.D. Cal. 1998).

But neither does the fact that federal law criminalizes certain conduct prevent states from making their own choices about what conduct to criminalize under state law. On the contrary: federal preemption analysis "start[s] with the assumption that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Here, the intent of Congress is very much the opposite: the CSA contains an *anti*-preemption provision expressly disclaiming preemptive intent "unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together." 21 U.S.C. § 903.

This type of "positive conflict" arises "when it is impossible to comply with both state and federal law." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). The AMMA does not create such an impossibility. "A claim of positive conflict might gain more traction if the [AMMA] *required* ... individuals to possess, cultivate, transport, possess for sale, or sell medical marijuana in a manner that violated federal law." *Qualified Patients Ass'n v. City of Anaheim*, 115 Cal. Rptr. 3d 89, 106 (Cal. Ct. App. 2010). But even though we may assume some Arizonans *wish* to do some of these things, nothing in the AMMA *requires* anyone to do any of these things. And all that

state officials must do under the AMMA is engage in normal regulatory functions where individuals and dispensaries seek to obtain registrations to comply with state law.

The state suggests that the AMMA may force Arizona officials to commit any of a number of federal offenses, including manufacturing, possessing, or distributing marijuana, 21 U.S.C. §§ 812, 841 ; using a communication facility to commit CSA violations, 21 U.S.C. § 843(b); and allowing a building to be used for the manufacturing, storage, distribution, or use of a controlled substance, 21 U.S.C. § 856.  Compl. ¶¶ 65-68, 70.  Yet nothing in the AMMA requires state officials – nor, for that matter, anyone else – to manufacture, distribute, or possess marijuana, or to use a communication facility, or maintain premises to do any of these things.  The state further alleges that the AMMA could expose state officials to federal conspiracy, aiding and abetting, and accessory liabilities.  Compl. ¶¶ 69, 71-73 (citing 18 U.S.C. §§ 2, 3, 371, and 21 U.S.C. § 846).  But conspiracy is an offense of specific intent, requiring that a defendant make "an agreement to accomplish an illegal objective" and also that he "intend[] to help accomplish it." *Conant v. Walters*, 309 F.3d 629, 635 (9th Cir. 2002) (citations and internal quotation marks omitted).  "[S]imple knowledge, approval of, or acquiescence in the object or purpose of a conspiracy" is insufficient.  *United States v. Lennick*, 18 F.3d 814, 818 (9th Cir. 1994).  Similarly, the crime of aiding and abetting requires that the defendant *intend* to facilitate the commission of a crime by another and *wish to bring it about*.  *See United States v. Singh*, 532 F.3d 1053, 1057-58 (9th Cir. 2008); *Conant*, 309 F.3d at 635-36.  Finally, accessory liability requires that the defendant specifically intend to frustrate the efforts of law enforcement officers.  *United States v. Lopez*, 482 F.3d 1067, 1076 (9th

Cir. 2007).  Under the AMMA, state officials may easily fulfill their ministerial

responsibilities of issuing identification cards and certifying dispensaries without

possessing the mens rea for any federal offense.

The state also suggests that state officials may be exposed to liability under federal

statutes prohibiting concealing a felony ("misprision") and money laundering.  Compl. ¶¶

74-75 (citing 18 U.S.C. §§ 4, 1956).  But misprision of felony requires the defendant to

have full knowledge of the commission of a felony and take affirmative steps to conceal

it.  *See, e.g.*, *United States v. Ciambrone*, 750 F.2d 1416, 1417-18 (9th Cir. 1984).  The

state describes this provision as a requirement of "reporting wrongdoing," Compl. ¶ 82,

but it is in fact no such thing: "Mere silence, without some affirmative act, is

insufficient."  *Lancey v. United States*, 356 F.2d 407, 410 (9th Cir. 1966).  Respecting

confidentiality does not constitute an affirmative act necessary for misprision.[4]  Indeed,

many Arizona statutes require state officials to protect the confidentiality of information

whether or not it is evidence of a federal felony; accepting the state's argument here

would cast doubt on the constitutionality of all of these laws.  *See, e.g.*, A.R.S. §§ 36-664

(information regarding communicable disease is confidential); 36-2220 (patient

information regarding Emergency Medical Services is confidential); 36-3005(A)(3)

(information regarding individuals served by domestic violence shelter is confidential).

Last, to commit the crime of money laundering, one must engage in a financial

transaction *knowing* the money involved was of unlawful origin and *intending* to promote

---

[4] One court recently found a state confidentiality statute preempted by federal law, but
only to the extent that it interferes with a specific federal investigatory subpoena, not
because of a conflict with 18 U.S.C. § 4.  *See United States v. Mich. Dep't of Cmty.
Health*, No. 1:10–mc–109, 2011 WL 2182418, at *13 (W.D. Mich. June 3, 2011).

or conceal the unlawful activity. *United States v. Marbella*, 73 F.3d 1508, 1514 (9th Cir.

1996). Administering the AMMA's medical marijuana fund requires ADHS employees

to engage in financial transactions, but state officials will have no ability to know the

origin of the funds, much less an intent to conceal or promote unlawful activity. Thus,

the AMMA does not require anyone to launder money. The Supreme Court has recently

reiterated that "[i]mpossibility pre-emption is a demanding [standard]." *Wyeth v. Levine*,

129 S. Ct. 1187, 1199 (2009). Having failed to show how state law requires them to do

what federal law forbids, Plaintiffs have not satisfied that demanding standard.

    Nor does the theory of "obstacle preemption" – i.e., "where the state law stands as

an obstacle to the accomplishment of the full purposes and objectives of Congress,"

*Silkwood*, 464 U.S. at 248 – apply to the AMMA. Obstacle preemption fails as a

threshold matter because Congress limited the scope of CSA preemption to

circumstances in which "there is a *positive conflict* between [a CSA provision] and [a]

State law *so that the two cannot consistently stand together*." 21 U.S.C. § 903 (emphasis

added). This language indicates Congress intended to preempt only state laws in positive

conflict with the CSA, and no others. *See County of San Diego v. San Diego NORML*, 81

Cal. Rptr. 3d 461, 478-81 (Cal. Ct. App. 2008), *cert. denied*, 129 S. Ct. 2380 (2009); *see

also S. Blasting Servs., Inc. v. Wilkes County*, 288 F.3d 584, 590-91 (4th Cir. 2002)

(interpreting materially identical language as allowing only impossibility preemption).

    And even if Congress had intended obstacle preemption to apply at all under the

CSA, it would not apply here, because the AMMA's system of state regulation for state

purposes does not in any way interfere with federal enforcement of federal crimes.

"[O]bstacle preemption only applies if the state enactment undermines or conflicts with federal law to such an extent that its purposes 'cannot otherwise be accomplished[.]'" *Qualified Patients Ass'n*, 115 Cal. Rptr. 3d at 108 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)).  Clearly, the objectives of the CSA may otherwise be accomplished notwithstanding the AMMA: federal officers may continue to investigate, arrest and prosecute those who possess, cultivate, transport, possess for sale, or sell medical marijuana in violation of federal law.  All Arizona has done is to indicate that certain marijuana-related violations of the federal CSA are not violations of state law, even as other marijuana-related CSA violations remain violations of state law.  To keep track of which are which, the state issues identification cards and registrations that have significance for the purposes of state law enforcement.  But these documents do not purport to exempt anyone from the requirements of federal law.  Though state officials enforcing state law must pay heed to the distinction between criminal and non-criminal marijuana cultivation under state law, federal officers may of course ignore Arizona's law when enforcing federal law, and continue to investigate, arrest and prosecute violators.  *See County of San Diego*, 81 Cal. Rptr. 3d at 481-83 (CSA does not preempt California law requiring counties to issue identification cards to qualifying patients); *City of Garden Grove v. Super. Ct.*, 68 Cal. Rptr. 3d 656, 677 (Cal. Ct. App. 2007) (rejecting preemption challenge to California medical marijuana law, because "[e]nforcement of the CSA can continue as it did prior to" the state law's passage (citations and internal quotation marks omitted)), *cert. denied*, 129 S. Ct. 623 (2008).  It is no harder for federal authorities to enforce federal law whether the violators have state registrations or not.

16

Moreover, the fact state and federal criminal law do not march in lockstep does not create a conflict; on the contrary, under the Tenth Amendment, "[e]ven where Congress has the authority ... to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts." *Printz v. United States*, 521 U.S. 898, 924 (1997) (citation and internal quotation marks omitted).  If federal prohibition of certain conduct could preempt a state's decriminalization of that same conduct, the result would be precisely what *Printz* forbids: federal law would *force* states to enact matching criminal prohibitions.  Under this theory, the scope of preemption in the field of criminal law would be staggering: preemption would arise from each of the "countless ... federal criminal provisions [prohibiting] conduct that happens not to be forbidden under state law."  *Gonzales v. Oregon*, 546 U.S. 243, 290 (2006) (Scalia, J., dissenting).

In sum, neither of the state's requested declarations from this court – either the "safe harbor" declaration, or federal preemption – would be legally correct.  Therefore the complaint does not state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, this Court should dismiss this action either for lack of jurisdiction or for failure to state a claim upon which relief can be granted.

Dated: July 7, 2011          Respectfully Submitted,

/s/ Scott Michelman
Scott Michelman (admitted *pro hac vice*)
  *smichelman@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
1101 Pacific Avenue, Suite 333
Santa Cruz, CA 95060
(831) 471-9000

Daniel J. Pochoda (SBA No. 021979)
  *dpochoda@acluaz. org*
ACLU FOUNDATION OF ARIZONA
77 E. Columbus Street, Suite 205
Phoenix, AZ  85012
(602) 650-1854

Lisa T. Hauser (SBA No. 006985)
  *lhauser@gblaw.com*
Cameron C. Artigue (SBA No. 011376)
  *cartigue@gblaw.com*
GAMMAGE & BURNHAM
Two North Central, 15th Floor
Phoenix, AZ 85004
(602) 256-0566

  *Counsel for Defendant Arizona Medical Marijuana
  Association*

/s/ Thomas W. Dean
Thomas W. Dean (SBA No. 015700)
  *attydean@gmail.com*
Post Office Box J
Flagstaff, AZ 86002
(928) 247-6132

  *Counsel for Defendant Arizona Association of
  Dispensary Professionals*

/s/ Ken Frakes
Ken Frakes (SBA No. 021776)
  KFrakes@roselawgroup.com
ROSE LAW GROUP, PC
 6613 N. Scottsdale Road, Suite 200
Scottsdale, AZ 85250
(480) 505-3931

*Counsel for Defendants Serenity Arizona, Holistic Health Management, Levine, Pennypacker, Flores, Christensen, Pollock, and Silva*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, thereby serving a Notice of Electronic Filing to the following ECF registrants:

**Aubrey Joy Corcoran**
Office of the Attorney General
1275 W. Washington St., Phoenix, AZ 85007
602-542-8890
Email: AubreyJoy.Corcoran@azag.gov

**Kevin D. Ray**
Office of the Attorney General
Education and Health Section - Health Unit
1275 W. Washington St, Phoenix, AZ 85007-2926
602-542-8328
Email: Kevin.Ray@azag.gov

**Lori Simpson Davis**
Office of the Attorney General
1275 W. Washington St., Phoenix, AZ 85007
602-542-7668
Email: Lori.Davis@azag.gov

I also certify that I caused the attached document to be sent by U.S. postal mail and electronic mail to:

**Scott Risner**
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Washington, DC 20001
202-514-2395
Email: Scott.Risner@usdoj.gov

/s/ Scott Michelman
Scott Michelman (admitted *pro hac vice*)
 *smichelman@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
1101 Pacific Avenue, Suite 333
Santa Cruz, CA 95060
(831) 471-9000