IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona; Janice K. Brewer, Governor of the State of Arizona, in her official capacity; William Humble, Director of the Arizona Department of Health Services, in his official capacity; Robert C. Halliday, Director of the Arizona Department of Public Safety, in his official capacity,<br><br>    Plaintiffs,<br><br>vs.<br><br>United States of America; United States Department of Justice; Eric H. Holder, Jr., Attorney General of the United States of America, in his official capacity; Dennis K. Burke, United States Attorney for the District of Arizona, in his official capacity; Arizona Association of Dispensary Professionals, Inc., an Arizona corporation; Joshua Levine; Paula Pennypacker; Nicholas Flores; Jane Christensen; Paula Pollock; Serenity Arizona, Inc., an Arizona corporation; Holistic Health Management, Inc., an Arizona corporation; Jeff Silva; Arizona Medical Marijuana Association; Does I-X and Does XI-XX,<br><br>    Defendants. | No. CV 11-1072-PHX-SRB<br><br>**ORDER** |

The Court now resolves the Motion to Dismiss for Lack of Jurisdiction filed on behalf

of the Arizona Association of Dispensary Professionals, Inc., Joshua Levine, Paula Pennypacker, Nicholas Flores, Jane Christensen, Paula Pollock, Serenity Arizona, Inc., Holistic Health Management, Inc., Jeff Silva, and the Arizona Medical Marijuana Association (collectively, "Non-Government Defendants") by the Arizona Medical Marijuana Association ("NG Defs.' MTD") (Doc. 30) and the Motion to Dismiss for Lack of Jurisdiction filed by Dennis K. Burke, Eric H. Holder, Jr., the United States Department of Justice, and the United States of America ("Gov't Defs.' MTD") (Doc. 38). At this time the Court also rules on Maricopa County and B. Joy Rich's (collectively, "Proposed Intervenors") Motion to Intervene ("Mot. to Intervene") (Doc. 31) and Motion for Hearing on the Motion to Intervene and for Leave to File Brief in Opposition to the NG Defendants' Motion to Dismiss ("Mot. for Hr'g") (Doc. 60) and Plaintiffs' three Motions to Supplement the Record ("Mots. to Supplement") (Docs. 54, 57-58).

## I. BACKGROUND

In this case, Plaintiffs seek one of two declaratory judgments: (1) that compliance with the Arizona Medical Marijuana Act ("AMMA") "provides a safe harbor from federal prosecution" under the federal Controlled Substances Act ("CSA") or (2) that "the AMMA does not provide a safe harbor from federal prosecution" because it is preempted by the CSA. (Doc. 1, Compl. ¶ 64.) Arizona voters passed the AMMA, an initiative measure, in November 2010, and it was signed into law by Governor Brewer in December 2010. (*Id.* ¶¶ 1-2.) The AMMA decriminalizes medical marijuana under certain circumstances and requires the Arizona Department of Health Services ("ADHS") to register and certify nonprofit medical marijuana dispensaries, dispensary agents, qualifying patients, and designated caregivers. (*Id.* ¶¶ 1, 3-4.) The AMMA provided time limitations within which the ADHS was to promulgate rules and regulations and begin accepting applications. (*Id.* ¶¶ 5-10.) The ADHS began accepting applications for qualifying patients and designated caregivers on April 14, 2011, and, as of May 24, 2011, had certified 3696 qualifying patients and 69 designated caregivers. (*Id.* ¶ 8.) The ADHS was to begin accepting applications for nonprofit medical marijuana dispensaries and dispensary agents on June 1, 2011. (*Id.* ¶ 11.) This

1  lawsuit was filed on May 27, 2011. (*Id.* at 30.)

2         The CSA classifies marijuana as a Schedule I controlled substance and makes it
3  unlawful to grow, possess, transport, or distribute marijuana. (*Id.* ¶ 65); *see also* 21 U.S.C.
4  §§ 812, 841(a), 844(a).  Pursuant to the CSA, it is also unlawful to manufacture, dispense,
5  or possess with the intent to manufacture, distribute, or dispense a controlled substance.
6  (Compl. ¶ 66); 21 U.S.C. § 841(a). It is also unlawful to conspire to violate the CSA. (Compl.
7  ¶ 69); 21 U.S.C. § 846. The CSA makes it a crime to knowingly open, lease, rent, use, or
8  maintain property for the purpose of manufacturing, storing, or distributing controlled
9  substances. (Compl. ¶ 70); 21 U.S.C. § 856(a)(1). Federal law also criminalizes aiding and
10 abetting another in committing a federal crime, conspiring to commit a federal crime,
11 assisting in the commission of a federal crime, concealing knowledge of a felony from the
12 United States, or making certain financial transactions designed to promote illegal activity
13 or conceal the source of the proceeds of illegal activity. (Compl. ¶¶ 71-75); 18 U.S.C. §§ 2-4,
14 371, 1956.

15        The Complaint alleges that, in other states with medical marijuana laws, the federal
16 government has threatened to enforce the CSA against people who were acting in compliance
17 with the state scheme. (Compl. ¶¶ 22-23, 77, 108-62.) Plaintiffs allege that they sought
18 guidance from the Arizona United States Attorney's Office regarding the interaction between
19 the AMMA and federal criminal law. (*Id.* ¶ 24.) On May 2, 2011, the then-United States
20 Attorney for the District of Arizona, Defendant Burke, sent Plaintiff Humble a letter stating
21 that growing, distributing, and possessing marijuana violates federal law no matter what state
22 law permits. (*Id.* ¶ 25; *id.*, Ex. B ("Burke Letter").) The letter also stated that the federal
23 government would continue to prosecute people who violate federal law and that compliance
24 with state law does not create a "safe harbor." (Compl. ¶ 25; Burke Letter.) The letter did not
25 address potential criminal liability for state employees working to implement the AMMA.
26 (Compl. ¶ 26.)

27        Plaintiffs allege that "[t]he employees and officers of the State of Arizona have a
28 mandatory duty to implement and oversee the administration of the AMMA." (*Id.* ¶ 81.)

- 3 -

1 However, Plaintiffs contend, in so doing, state employees "face a very definite and serious 2 risk that they could be subjected to federal prosecution for aiding and abetting the use, 3 possession, or distribution of marijuana under the CSA" or could face liability for failing to 4 report wrongdoing. (*Id.* ¶¶ 82-83.) Plaintiffs seek relief under the Declaratory Judgment Act, 5 requesting that the Court "declare the respective rights and duties of the Plaintiffs and the 6 Defendants regarding the validity, enforceability, and implementation of the AMMA" and 7 that the Court "determine whether strict compliance and participation in the AMMA provides 8 a safe harbor from federal prosecution." (*Id.*, Prayer A-B.)

9 Both the Government Defendants and the Non-Government Defendants move to 10 dismiss the Complaint in its entirety. (NG Defs.' MTD at 1; Gov't Defs.' MTD at 1.) Both 11 pending Motions to Dismiss challenge whether Plaintiffs have sufficiently alleged a case or 12 controversy (or, instead, whether Plaintiffs seek an improper advisory opinion from the 13 Court) and whether Plaintiffs' claims are ripe for review. (NG Defs.' MTD at 5-7, 9-11; 14 Gov't Defs.' MTD at 8-11, 13-17.) Both Motions also argue that the Court does not have 15 jurisdiction over a request by state officials to declare the validity or invalidity of a state law. 16 (NG Defs.' MTD at 7-9; Gov't Defs.' MTD at 5-7.) The Court heard oral argument on the 17 Non-Government Defendants' Motion on December 12, 2011. (*See* Doc. 59, Minute Entry.) 18 Ruling from the bench at the hearing, the Court dismissed all fictitious Defendants. (*Id.* at 19 1.)

20 After the hearing, Plaintiffs filed a Notice of Intent to File a Motion for Leave to 21 Amend Complaint ("Pls.' Notice"). (*See* Doc. 64.) Plaintiffs informed the Court that they 22 "will be seeking to amend their Complaint to refine their position and resolve any case or 23 controversy issues." (*Id.* at 1-2.) Plaintiffs stated in the Notice that they plan to file their 24 Motion to Amend by January 9, 2012, and requested that the Court delay ruling on the 25 pending Motions to Dismiss until after that date. (*Id.* at 2.) For the reasons stated herein, the 26 Court declines to delay resolution of the Motions to Dismiss, which have already been 27 pending for several months. Based on the scant detail in the Notice, the Court is unconvinced 28 that the following defects will be corrected by Plaintiffs' intended amended Complaint.

## II. LEGAL STANDARDS AND ANALYSIS

### A. Motions to Dismiss: Ripeness

The Court turns first to the question of ripeness, which is raised by all Defendants in the two Motions to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1). (NG Defs.' MTD at 9-11; Gov't Defs.' MTD at 12-17.) It is not clear from Plaintiffs' Notice whether they intend to address ripeness.[1] Even if Plaintiffs were to amend the Complaint as they state they intend to do, "to refine their position and resolve any case or controversy issues," the defects identified herein would remain. (*See* Notice at 1-2); *see also Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010) ("The ripeness doctrine rests, in part, on the Article III requirement that federal courts decide only cases and controversies and in part on prudential concerns.").

"Because . . . ripeness pertain[s] to federal courts' subject matter jurisdiction, [it] is properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "The district courts of the United States, as we have said many times, are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court may weigh the evidence to determine whether it has jurisdiction. *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005). The burden of proof is on Plaintiffs to show that this Court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) ("The party asserting jurisdiction has the burden of proving all jurisdictional facts." (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Unlike a Rule 12(b)(6) motion, there is no presumption of truthfulness attached to Plaintiffs' allegations. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d

---

[1] Much of the parties' arguments at the hearing were focused on whether Plaintiffs needed to "take a position" on the validity of the AMMA in order to create a live case or controversy for the Court to adjudicate.

1 730, 733 (9th Cir. 1979).

2 "The question of ripeness turns on the fitness of the issues for judicial decision and
3 the hardship to the parties of withholding court consideration." *Chandler*, 598 F.3d at 1122
4 (internal alteration, quotation, and citation omitted). The main focus of the ripeness inquiry
5 is "whether the case involves uncertain or contingent future events that may not occur as
6 anticipated, or indeed may not occur at all." *Richardson v. City & Cnty. of Honolulu*, 124
7 F.3d 1150, 1160 (9th Cir. 1997) (internal quotation and citation omitted). Courts have no
8 subject matter jurisdiction over unripe claims and must dismiss them. *See S. Pac. Transp. Co.
9 v. City of L.A.*, 922 F.2d 498, 502 (9th Cir. 1990).

10 Ripeness has both constitutional and prudential components. *Portman v. Cnty. of
11 Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993). "The constitutional component of ripeness
12 overlaps with the 'injury in fact' analysis for Article III standing . . . [and] [w]hether framed
13 as an issue of standing or ripeness, the inquiry is largely the same: whether the issues
14 presented are 'definite and concrete, not hypothetical or abstract.'" *Wolfson v. Brammer*, 616
15 F.3d 1045, 1058 (9th Cir. 2010) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220
16 F.3d 1134, 1139 (9th Cir. 2000)). Analysis of the prudential component weighs "the fitness
17 of the issues for judicial decision and the hardship to the parties of withholding court
18 consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other
19 grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). As explained below, the Court
20 finds that Plaintiffs have not satisfied either element of ripeness.

21 **a.    Constitutional Component**

22 Defendants argue that Plaintiffs cannot satisfy the constitutional component of
23 ripeness because they have not shown that a genuine threat of imminent prosecution exists.
24 (NG Defs.' MTD at 9; Gov't Defs.' MTD at 13.) A plaintiff making a pre-enforcement
25 challenge must demonstrate more than the "mere existence of a proscriptive statute" or a
26 "generalized threat of prosecution" to satisfy the case or controversy requirement. *Wolfson*,
27 616 F.3d at 1058 (internal quotation and citation omitted). While "one does not have to await
28 the consummation of threatened injury to obtain preventive relief," a claim is not ripe unless

the plaintiff is "subject to a *genuine* threat of *imminent* prosecution." *Id.* (internal quotations and citations omitted). To determine whether a claimed threat of prosecution is genuine, courts consider three factors: "(1) whether the plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the challenged statute." *Id.*

The Government Defendants argue that Plaintiffs have not satisfied the first element of the test because "they do not detail any concrete plan to act in violation of the CSA." (Gov't Defs.' MTD at 14.) Plaintiffs respond that "[t]he actions to be taken by the State and its officers and employees [under the AMMA] will clearly expose them to federal criminal liability, and the Federal Defendants have provided no safe harbor or immunity for actions taken in strict compliance with the AMMA." (Pls.' Resp. to Gov't Defs.' MTD ("Pls.' Gov't Resp.") at 6-7.) Since Plaintiffs have not, as of yet, articulated their position with respect to the validity of the AMMA and their intentions regarding enforcement, the Complaint does not articulate a concrete plan to violate the law in question. (*See* Compl. ¶¶ 81-83 (explaining the obligations of state employees under the AMMA but not expressing a plan to enforce the dispensary provisions to their full extent).) However, even if the Complaint were amended to take a position *and* that position involved enforcement of the AMMA such that state employees might be at risk of violating the CSA, evaluation of the second two factors would still indicate that Plaintiffs' claims are unripe.

The Complaint alleges that "[t]he Government Defendants have communicated a specific warning or threat of criminal prosecution and other legal proceedings to Director Humble." (*Id.* ¶ 87.) However, the allegations in the Complaint that describe the letter sent by Defendant Burke to Director Humble are silent as to state employees.[2] (*See* Compl. ¶¶ 104-07.) Rather, the Complaint states that the United States Attorneys in Washington notified

---

[2] Plaintiffs assert that they have standing to challenge this law on behalf of the state and on behalf of state employees. (*See* Pls.' Gov't Resp. at 12-13.)

- 7 -

Washington's governor that state employees carrying out activities pursuant to Washington's medical marijuana law would not be immune under the CSA. (*Id.* ¶ 113; *see also id.*, Ex. A.) The Complaint also alleges that the United States Attorney in Vermont warned state lawmakers that expanding Vermont's medical marijuana law to include state-licensed dispensaries would "place the state in violation of federal law." (Compl. ¶ 153.) The actions of federal officials in relation to other states do not substantiate a credible, specific warning or threat to initiate criminal proceedings against state employees in Arizona if they were to enforce the AMMA. Even if the letters from the United States Attorneys, in Arizona or other states, are interpreted as threats or warnings, a "generalized threat" is not sufficient to satisfy this element. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1125 (9th Cir. 2009). Plaintiffs have not shown that any action against state employees in this state is imminent or even threatened. *See id.* ("[B]ecause no enforcement action against plaintiffs is concrete or imminent or even threatened, Appellees' claims against [defendant] are not ripe for review.").

Moreover, the Complaint does not detail any history of prosecution of state employees for participation in state medical marijuana licensing schemes. *See Wolfson*, 616 F.3d at 1058.[3] The Complaint fails to establish that Plaintiffs are subject to a genuine threat of imminent prosecution and consequently, the Complaint does not meet the constitutional requirements for ripeness. Therefore, Plaintiffs' claims are unripe and must be dismissed.

### b.  **Prudential Component**

Even if the Complaint had satisfied the constitutional component of ripeness, the Court would still find that the claims are not ripe for review for prudential reasons because the issues, as presented, are not appropriate for judicial review and because Plaintiffs have

---

[3] The information attached to Plaintiffs' three Motions to Supplement does not alter the Court's conclusions in any way. As Defendants do not oppose these Motions and they are not improper, the Court grants Plaintiffs' Motions to Supplement. However, none of the documents Plaintiffs supply relate to prosecution of state employees or to threatened prosecutions of anyone in Arizona. (*See* Docs. 54, 57-58.)

- 8 -

1 2 3 4 5 6 7 8 9 10 11 12 13 not shown that they will endure any particular hardship as a result of withholding judicial consideration at this time. *See Stormans*, 586 F.3d at 1126. "'A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Id.* (quoting *US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999)). Although "pure legal questions that require little factual development are more likely to be ripe, a party bringing a preenforcement challenge must nonetheless present a concrete factual situation . . . to delineate the boundaries of what conduct the government may or may not regulate without running afoul of the Constitution." *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007) (internal quotation and citation omitted). Plaintiffs do not challenge any specific action taken by any Defendant. Plaintiffs also do not describe any actions by state employees that were in violation of the CSA or any threat of prosecution for any reason by federal officials. These issues, as presented, are not appropriate for judicial review.

14 15 16 17 18 19 20 21 22 23 24 25 26 27 Furthermore, Plaintiffs have not satisfied the requirement that they demonstrate hardship in the absence of court intervention. "To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *US W. Commc'ns*, 193 F.3d at 1118 (internal quotation and citation omitted). "Although the constitutional and prudential considerations are distinct, the absence of any real or imminent threat of enforcement, particularly criminal enforcement, seriously undermines any claim of hardship." *Thomas*, 220 F.3d at 1142. In fact, the Ninth Circuit Court of Appeals has observed that requiring defendants to defend a law "in a vacuum and in the absence of any particular victims" creates a hardship for the defendant. *Id.* Plaintiffs' claims are not specific enough to satisfy this element of the prudential ripeness test. As explained above, the Complaint details no concrete or imminent threat of enforcement, nor does it describe with any credible detail a state employee at risk of federal prosecution under the CSA. Plaintiffs have not satisfied the prudential component of ripeness.

28

### B. Proposed Intervenors' Motions

Maricopa County and B. Joy Rich seek to intervene in this matter and seek a hearing on their Motion and to oppose Defendants' Motions to Dismiss. (Mot. to Intervene at 1; Mot. for Hr'g at 1.) As the Court dismisses the Complaint in its entirety, both of the Proposed Intervenors' Motions are denied without prejudice at this time. There is currently no active case in which to intervene, and a hearing on this question would not be helpful. Briefing on Defendants' Motions to Dismiss and on the Motion to Intervene closed months ago, and the Proposed Intervenors may not now have an opportunity to respond to Defendants' arguments.

### III. CONCLUSION

Because Plaintiffs have not satisfied either the constitutional or prudential components of ripeness, the Complaint must be dismissed. Plaintiffs' stated intention to amend the Complaint by January 9, 2011, in order to attempt to resolve "any case or controversy issues" does not appear likely to remedy this defect. The Court dismisses the Complaint without prejudice, and Plaintiffs may amend within 30 days; however, if they choose to replead their claims, Plaintiffs must resolve the problems described in this Order.

**IT IS THEREFORE ORDERED** granting the Motion to Dismiss for Lack of Jurisdiction filed on behalf of all named non-government Defendants by the Arizona Medical Marijuana Association (Doc. 30) and the Motion to Dismiss for Lack of Jurisdiction filed by Dennis K. Burke, Eric H. Holder, Jr., the United States Department of Justice, and the United States of America (Doc. 38) and dismissing the Complaint without prejudice.

**IT IS FURTHER ORDERED** granting Plaintiffs 30 days, including the date of entry of this Order, to file any amended Complaint.

**IT IS FURTHER ORDERED** denying without prejudice Maricopa County and B. Joy Rich's Motion to Intervene (Doc. 31) and Motion for Hearing on the Motion to Intervene and for Leave to File Brief in Opposition to the NG Defendants' Motion to Dismiss (Doc. 60).

/ / /

/ / /

**IT IS FURTHER ORDERED** granting Plaintiffs' Motions to Supplement the Record (Docs. 54, 57-58).

DATED this 4th day of January, 2012.

_____
Susan R. Bolton
United States District Judge